[No. 36607. Department Two. January 30, 1964.]

BEVELY VERNON SANDERS et al., Appellants, v. DONALD L. CRIMMINS et al., Respondents.*

*Reported in 388 P. (2d) 913.

*William J. Rush* (of *Rush & Lynch*), for appellants.

*James P. Healy,* for respondents.

HAMILTON, J.—On December 19, 1960, at about 4:30 p.m., a collision occurred at the uncontrolled, unmarked, partially obstructed intersection of Croft and South 106th Streets, in Pierce County, Washington. Immediately prior to the collision, the favored vehicle, a light colored 1956 Ford, driven by plaintiff wife, was approaching the intersection, proceeding in an easterly direction on South 106th Street, an 18-foot, two-lane, oil-mat roadway. The disfavored vehicle, a light colored 1959 Ford, driven by defendant husband, was approaching the intersection traveling south on Croft Street, a two-lane, 14-foot, gravelly, oil-mat roadway. The day had been dull and gray and it was growing dark. Plaintiff driver testified she had the vehicle's parking lights on. Defendant driver testified his vehicle's headlights were on. He stated plaintiffs' vehicle was unlighted. Topography of the area and a house and tree on the northwest corner of the intersection obstructed long-range observation of both drivers. The speed limit was 35 miles an hour at the intersection.[1]

Plaintiff driver testified she was traveling 20 to 25 miles an hour and first observed defendants' vehicle when she

---

[1]The intersection is outside city limits. Speed, at the time in question, was controlled by Laws of 1951, chapter 28, § 7, p. 55 (*cf.* RCW 46.48-.021).

was 8 to 10 feet and it was about 15 to 20 feet from the intersection. She described her observation and actions as follows:

"A. I glanced and—just briefly to the right, and then looked to the left; and as I looked to the left, I saw this blur of blue. That was Mr. Crimmins' car. Q. And what happened then? A. I realized that there was going to be a collision. I applied the brakes, put my head down and turned the wheels very sharply to the right."

Defendant driver testified he approached the intersection at a speed of 30 to 35 miles an hour, and that when he reached a point from which he could observe to the west on South 106th Street (approximately 40 feet from the intersection) he slowed down to about 25 miles an hour, looked to his right, saw no vehicle on South 106th Street within the then range of his observation (60 to 80 feet), looked to his left, and entered the intersection, again looking to his right at which time he first observed plaintiffs' vehicle an estimated 30 to 40 feet distant. Defendant driver described his reaction and the result as follows:

"A. . . . At this time as the nose of my car entered the intersection I saw Mrs. Sanders' car coming on 106th from west to east. It was at this time that I was aware that an accident was possibly going to occur. I thought it would occur at this time. Because of the gravel on the road I knew it wouldn't do any good to hit the brakes, so at this time I accelerated the car, and I was struck in the middle of my car, right approximately this area of the intersection. . . . A. . . . I think that I—I did possibly veer to the left a slight bit because there was a split second when I thought that I had missed, had been missed; and then I felt the crunch and—"

Impact occurred in the southwest quadrant of the intersection, inflicting considerable damage to both vehicles, and forced defendants' vehicle into a ditch on the east side of Croft Street and slightly south of the intersection. From his momentary observation and the force of the impact, defendant driver approximated the speed of plaintiffs' vehicle at 35 to 40 miles an hour.

Plaintiffs in their complaint charged negligence. Defendants denied liability and alleged contributory negligence.

At the time of taking exceptions to the instructions, plaintiffs moved for a directed verdict upon the issues of negligence and contributory negligence. The motions were denied. The issues of defendants' negligence, deception, and plaintiffs' contributory negligence were submitted to the jury. The jury returned a verdict for defendants. Plaintiffs appeal, basically urging error in the denial of their motions for directed verdict and for a new trial.

■ The defendant driver entered the partially obstructed intersection to the left of plaintiffs' approaching vehicle. He was the disfavored driver under Laws of 1955, chapter 146, § 3, p. 645 (*cf*. RCW 46.60.150).[2] A collision occurred within the intersection. The applicable rule is succinctly stated in *Zorich v. Billingsley*, 52 Wn. (2d) 138, 142, 324 P. (2d) 255, as follows:

"The fact that two cars collide within an intersection establishes that they were simultaneously approaching a given point within the intersection, within the meaning of the statute; and the disfavored driver may not escape liability for his failure to yield the right of way unless he proves that, as a reasonably prudent driver, he was deceived by the wrongful operation of the vehicle on his right. *Smith v. Laughlin, supra* [51 Wn. (2d) 740, 321 P. (2d) 907]; *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533."

Plaintiffs first contend, in support of their motions for directed verdict and new trial, that viewing the evidence in a light most favorable to defendants the trial court erred in submitting the issue of defendants' negligence to the jury. Defendants seek exoneration from a determination of negligence as a matter of law upon the premise that the evidence projects, as a question of fact, deception based upon the plaintiffs' lack of headlights and speed.

---

[2]"Every operator of a vehicle on approaching public highway intersections shall look out for and give right of way to vehicles on his right, simultaneously approaching a given point within the intersection, and whether his vehicle first reaches and enters the intersection or not: *Provided*, That this section shall not apply to operators on arterial highways or to vehicles entering an intersection which is posted with the 'Yield Right of Way' sign." Laws of 1955, chapter 146, § 3, p. 645 (*cf*. RCW 46.60.150).

We agree with plaintiffs' contention.

Defendant driver was approaching, at dusk, an obstructed intersection traveling upon a gravelly road surface. He was familiar with the road having traveled it on prior occasions. He made his only observation to the right, before reaching the intersection, from a point where his view was restricted to a distance of from 60 to 80 feet. The fact of collision establishes that plaintiffs' vehicle was simultaneously approaching the intersection. Time and distance factors necessarily place plaintiffs' vehicle within a reasonable proximity of 80 feet from the intersection at the time defendant driver first looked to his right. Plaintiffs' vehicle was light in color. Defendant driver testified that the dusk of the day was not such as to render unlighted objects invisible at a distance of 80 feet or more, and that he could have seen plaintiffs' vehicle at that distance. He did not look to his right again or see plaintiffs' vehicle until he was entering the intersection and a collision was imminent. He approximated her speed at 35 to 40 miles an hour. Because of the road surface and his then speed he could not yield the right of way. His only alternative was to initiate a race, which he lost.

A disfavored driver's obstructed view of a favored vehicle does not constitute deception. *Shultes v. Halpin,* 33 Wn. (2d) 294, 205 P. (2d) 1201; *King v. Molthan,* 54 Wn. (2d) 115, 338 P. (2d) 338. It is the duty of a disfavored driver approaching an obstructed intersection to make his observations from a point at which he can clearly observe, not from a point back from the intersection where his view is materially impaired. *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371. Obstructions to view and adverse road and atmospheric conditions intensify, rather than diminish, the attentiveness and vehicular control required. The fact that a favored vehicle is unlighted, although otherwise visible, does not relieve the disfavored driver of his obligation to maintain a proper and effective lookout and to yield the right of way. The defense of deception is not open to one who did not see the favored vehicle until the instant before collision. *Smith v. Laughlin,* 51 Wn. (2d) 740, 321

P. (2d) 907; *Zorich v. Billingsley, supra*; *King v. Molthan, supra.* And, a technical violation of the speed limit, or an estimate of speed by a driver who has but a fleeting moment to form an impression and whose mind is occupied with impending disaster will not support a claim of deception. *Zorich v. Billingsley,* 55 Wn. (2d) 865, 350 P. (2d) 1010; *Chavers v. Ohad,* 59 Wn. (2d) 646, 369 P. (2d) 831; *Charlton v. Baker,* 61 Wn. (2d) 369, 378 P. (2d) 432.

Defendant driver was not deceived. He was negligent, as a matter of law, in failing to maintain a proper lookout and yield the right of way. His negligence was a proximate cause of the accident. The trial court erred in submitting the question of his negligence to the jury.

Next, plaintiffs contend the trial court erred in submitting to the jury the issue of plaintiff driver's alleged contributory negligence based upon speed and lack of headlights. We agree with plaintiffs as to the element of speed, but disagree as to the element of lighting.

The only testimony of the speed of plaintiffs' vehicle, other than that of the plaintiff driver, was the defendant driver's estimate. His approximation of plaintiff driver's speed was based upon his observation and the impression received at the moment and from the force of impact. As stated in *Charlton v. Baker, supra,* such testimony does not constitute substantial evidence of speed.

Defendants, however, assert that the force of impact coupled with the damage inflicted upon the vehicles supports the defendant driver's estimate. Although the exhibits reflect considerable damage to the vehicles, they also reveal the vehicles did not travel far following impact. Furthermore, the defendant driver testified he was accelerating immediately prior to and at the moment of impact. He estimated he could have reached a speed of 40 miles an hour at the moment of impact. Under such circumstances, the physical facts lend little, if any, substantial support to defendants' contention of excessive speed.

The issue of contributory negligence predicated upon the speed of plaintiffs' vehicle should not have been submitted to the jury.

Such is not the case, however, with respect to the question of plaintiff driver's headlights. There is a conflict in the evidence as to whether plaintiffs' vehicle had any lights showing, and as to the degree of darkness, the necessity for headlights, and the presence or absence of street lights.

■ Laws of 1955, chapter 269, § 2, p. 1125 (*cf.* RCW 46.37.020), in effect at the time of the accident, provided:

"Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of five hundred feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles."

Laws of 1955, chapter 269, § 3, p. 1125 (*cf.* RCW 46.37-.030); Laws of 1955, chapter 269, § 22, p. 1139 (*cf.* RCW 46.37.220); and Laws of 1955, chapter 269, § 23, p. 1139 (*cf.* RCW 46.37.230), prescribe the use and intensity of headlights in conformity with Laws of 1955, chapter 269, § 2, p. 1125 (*cf.* RCW 46.37.020).

In *Pollard v. Wittman,* 28 Wn. (2d) 367, 183 P. (2d) 175, we held a violation of statutory lighting requirements constituted negligence per se, and stated (p. 371):

"The duty imposed by the statute on the operator of a motor vehicle to drive with adequate lights at night is not merely for the benefit of such operator to enable him to see and avoid injury to others, but for benefit of others to enable them to avoid injury from approaching motor vehicles. [citing cases]"

In the instant case, from the evidence presented, the jury would be entitled to find (a) the degree of darkness required headlights, (b) plaintiff driver did not have her headlights on, (c) the projected beam of plaintiffs' headlights, had they been on, would have timely alerted defendant driver to the approach of plaintiffs' vehicle, and (d) the absence of headlights constituted a contributing proximate cause of the accident.

The trial court did not err in submitting the issue of contributory negligence premised upon the absence of adequate lighting on plaintiffs' vehicle.

Plaintiffs are entitled to a new trial limited to the issues of contributory negligence and damages.

The judgment is accordingly reversed. Costs will abide the outcome of the new trial.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.