[No. 37558.    En Banc.    November 30, 1967.]

LAWRENCE RUDOLPH NELSON *et al., Appellants*, v. SHERMAN BLAKE *et al., Respondents.**

*Reported in 434 P.2d 595.

C. *Edwin Elkins*, for appellants.

*Del Cary Smith, Jr.* (of *Smith, Smith & Smith*), for respondents.

HILL, J.—Only one issue is presented on this appeal:[1] In an intersection collision (nonarterial; no traffic controls) was the contributory negligence of the favored driver (the driver on the right) a jury question where there was testimony that he was traveling 40 miles per hour (he says 20 to 25; the legal limit was 25 miles per hour) on a street covered with compact snow and ice (as were all streets in the area) and was within 30 feet of the intersection when he first saw the disfavored driver's car some 60 feet from the intersection. (The disfavored driver's testimony places the favored driver 100 feet from the intersection when the disfavored driver was 67 feet from it.)

On this conflicting testimony, the trial court submitted the issue of the favored driver's contributory negligence to the jury; and the jury, by its verdict for the defendant, of necessity must have found the favored driver contributorily negligent.

This may well be known as the "compact snow-and-ice case," for the traffic hazards that are inherent in traveling on compact snow and ice were part of the prevailing conditions that the jury had to take into consideration in determining whether the favored driver exercised reasonable care for his own safety.

---

[1]The original opinion in this case appeared in the advance sheets of November 11, 1966 (69 W.D.2d 626). It did not appear in 69 Wn.2d, inasmuch as a rehearing was then pending. On the rehearing, it was decided to withdraw the original opinion and to replace it with the present opinion.

We agree that the contributory negligence of the favored driver, under the circumstances indicated, was a jury question; and that the judgment, based on the jury verdict denying him any recovery, should be affirmed.

The court desires to make it clear that there is no weakening of the rule laid down in our cases[2] construing the right-of-way statute then in effect, *i.e.* RCW 46.60.150 (now RCW 46.61.180).[3]

The disfavored driver's negligence in failing to yield the right of way is clear, and we are not concerned on this appeal with any attempt on his part to recover damages.

■ The favored driver, having the right of way, would have recovered in this case but for the finding of the jury that he, too, was negligent and that his negligence was a contributing cause of the collision. We have frequently, as in *Robison v. Simard*, 57 Wn.2d 850, 360 P.2d 153 (1961), held that a favored driver may not recover where he has failed to operate his car in a careful and prudent manner under prevailing conditions.[4]

■ The jury could have concluded that the favored driver was driving too fast under the conditions then existing, or that he had failed to keep the lookout for traffic on his left that an ordinarily prudent man would have done, or both. We are unable to say, as a matter of law, that he was not contributorily negligent; and therefore the issue of contributory negligence was for the jury.

The judgment is affirmed.

---

[2] *Archibald v. Gossard,* 65 Wn.2d 486, 397 P.2d 851 (1965); *Sanders v. Crimmins,* 63 Wn.2d 702, 388 P.2d 913 (1964); *Mondor v. Rhoades,* 63 Wn.2d 159, 385 P.2d 722 (1964).

[3] "Every operator of a vehicle on approaching public highway intersections shall look out for and give right of way to vehicles on his right, simultaneously approaching a given point within the intersection, and whether his vehicle first reaches and enters the intersection or not: . . ." RCW 46.60.150.

[4] Additional cases similar in result to *Robison v. Simard, supra,* include *Day v. Frazer,* 59 Wn.2d 659, 369 P.2d 859 (1962); *Watson v. Miller,* 59 Wn.2d 85, 366 P.2d 190 (1961); *Reynolds v. Kuhl,* 58 Wn.2d 313, 362 P.2d 589 (1961).

FINLEY, C. J., WEAVER, HUNTER, HAMILTON, and NEILL, JJ., concur.

HALE, J. (dissenting)—I accept the majority's thesis that the issue of contributory negligence, when properly pleaded, if supported by substantial evidence, must be submitted to the jury. In my view, however, this case falls not under that principle, but rather within the well-established rules recently restated in *Boley v. Larson*, 69 Wn.2d 621, 419 P.2d 579 (1966), that

> Contributory negligence is an affirmative defense; the burden of proving it rests on the defendant. If there is no evidence of contributory negligence, it is an error of law to submit the issue to the jury.

The foregoing principle rests on the more general rule that, if there is not substantial evidence to support an issue of fact, it ought not be submitted to the jury. In *Cote v. Allen*, 50 Wn.2d 584, 313 P.2d 693 (1957), this court held that, although each party is entitled to have his theory of the case presented to the jury by proper instructions when there is evidence to support it, the court should not instruct upon an issue or theory in the absence of *substantial* evidence concerning the theory or issue. Shortly thereafter, in *White v. Peters*, 52 Wn.2d 824, 329 P.2d 471 (1958), we said that the trial court properly refused to give a proposed instruction on contributory negligence because, although some evidence of it existed in the record, the evidence was not of a substantial character. To submit an issue to the jury unsupported by substantial evidence is thus prejudicial error. *White v. Peters, supra; Cote v. Allen, supra; Brewer v. Berner*, 15 Wn.2d 644, 131 P.2d 940 (1942); 36 Wash. L. Rev. 378-382. A different rule would convert the trial from a quest for the truth into a popularity contest.

On this point, 2 Orland, Wash. Prac. § 269 (2d ed. 1965), says:

> It is error to give instructions containing theories which are not supported by evidence in the record. Thus, it would be error to give an instruction on contributory negligence where there was no evidence of contributory negligence in the record, . . . .

I would assume, then, that less than substantial evidence, or a mere scintilla, constitutes the legal equivalent of no evidence, and this court does not deem less than substantial evidence or a scintilla sufficient to support a verdict. *Poland v. Seattle*, 200 Wash. 208, 93 P.2d 379 (1939); *Dunsmoor v. North Coast Transp. Co.*, 154 Wash. 229, 281 Pac. 995 (1929).

Applying these principles to the instant case, it will be seen that defendant's sole claim of contributory negligence depends on establishing that plaintiff drove at a higher rate of speed than the prevailing conditions of compacted snow on the streets reasonably allowed, and that such excess speed was a proximate cause of the accident. I find, however, in my review of the record no more than a scintilla of evidence to support an inference of excessive speed on plaintiff's part or that the speed claimed was a proximate contributing cause of the accident. On the contrary, I think the record establishes that the sole cause of the accident was the defendant's failure to yield the right of way to a vehicle approaching an uncontrolled intersection from his right—that is, his failure to comply with RCW 46.60.150 (now RCW 46.61.180), which declared:

> Every operator of a vehicle on approaching public highway intersections shall look out for and give right of way to vehicles on his right, simultaneously approaching a given point within the intersection, and whether his vehicle first reaches and enters the intersection or not:
> . . . .

What, then, was the basis for submitting contributory negligence to the jury?

My study of the record discloses only three items of evidence upon which excessive speed could possibly be claimed, and these appear wanting in sufficient substance to support a finding of contributory negligence. The first such item of evidence was the proof that, from the resultant force of defendant's Volkswagen striking plaintiff's Corvair nearly broadside, the Corvair moved, slid, turned and traversed a course on the packed icy snow across a level, barrier-free surface onto a yard on the northwest

corner of the intersection for a distance of about 93 feet. No one testified as to the speed deducible from a slide of this distance on glare ice or frozen compacted snow. It became anyone's guess. One can as readily compute plaintiff's speed from this slide at 10, 15, 25 or even 40 miles per hour for all that this record discloses.

A slide of 93 feet on compacted snow and ice, as a resultant of the car's momentum and the right angle force of defendant's car striking it at defendant's admitted speed of 20 to 25 miles per hour, furnished no evidence that plaintiff's car was then traveling above a given speed for there was no proof as to what the slide indicated in terms of speed. Hence, the 93-foot slide supplied no evidence whatever of contributory negligence, for it was as consistent with a slow prudent speed as with excessive speed.

Another item of evidence concerning defendant's claim of excess speed was his testimony that he estimated it at 40 miles per hour. Defendant said that he was driving north on Sargent toward its intersection with Sinto, when, at a point about 100 feet from the intersection, he looked first to his left for approaching cars and saw none. Then, after traveling another 15 or 20 feet at 20 to 25 miles per hour toward the intersection, he looked to his right—or perhaps he was, as he put it, only "Fifty or 75, it all depends how far I traveled when I looked left"—and saw the Corvair. In describing his view of the Corvair, he testified:

Q. Then you looked to your right. A. Yes. Q. For the first time, either 50 or 75 feet back, you don't know which, but somewhere in there? A. Somewhere in that bracket.

It was in this interval within 50-75 feet of the intersection, traveling 20-25 miles per hour, that defendant estimated plaintiff's speed at 40 miles per hour and thus supplied an item of evidence from which it is claimed the issue of contributory negligence may be submitted to the jury— an estimate formed during the fleeting glimpse afforded him as he traveled 50 to 75 feet and rammed the Nelson car as he described it "almost right angles, broadside."

To determine whether defendant's impression constituted substantial evidence or a mere scintilla, one should consider the witness's preoccupation with other things during its fleeting formative period as shown in his cross-examination:

Q. I presume you didn't look to the right to his car and kept watching it as it came to the intersection? A. Pretty much so. Q. Oh, you did? Weren't you pretty busy trying to see where you could go to avoid the accident? A. I had my foot on the brake, to avoid the accident. Q. Of course you had your foot on the brake, but weren't you paying attention to where you were going and to see where you could take your car? A. As I was turning the wheel, it made no difference, I was going in a straight line. Q. Of course you don't turn the wheel where you are not looking, do you? In all fairness, you are paying pretty much attention to what you are doing? A. I think I was trying to avoid him and watching him. Q. You turned the wheel on your car? A. Yes, to try to get off the road one way or the other. Q. But you weren't watching where your car might have gone? A. Not particularly. Q. Which way did you turn your wheels? A. Automatically, I turned to the left. Q. Automatically you turned to the left? A. Yes. Q. And did you look to the left to see what you might be turning into? A. No, but I looked previously. I had no oncoming traffic towards me. I was more concerned about him at that point. Q. You are talking about at the intersection. I am talking about when you first got your first glimpse, did you turn your wheels to the left to avoid him? A. I believe I tried to. Q. You were pretty busy with what you were doing, you didn't look to your right and stare at him, did you? A. I was watching him most of that time. Q. It is your testimony you didn't look to your right, and your gaze became more or less fixed on him and you watched him as you were coming up? A. Pretty much so.

Thus, according to his own testimony, defendant formed the indispensable estimate of excessive speed during the space-time interval that his car moved 50 to 75 feet on icy roads while he looked ahead for oncoming traffic, turned his wheels left, applied his brakes, noted that his car, failing to answer the wheel, continued in a straight line, and he simultaneously reached an objective impression that the collision was inevitable. So fragmentary and fleeting a

glimpse of the oncoming car by so busy and preoccupied a driver under these harrowing circumstances, can hardly be claimed to go beyond a scintilla of evidence in meeting the requirements of proof to support the issue of contributory negligence.

We said in *Sanders v. Crimmins,* 63 Wn.2d 702, 707, 388 P.2d 913 (1964):

> The only testimony of the speed of plaintiffs' vehicle, other than that of the plaintiff driver, was the defendant driver's estimate. His approximation of plaintiff driver's speed was based upon his observation and the impression received at the moment and from the force of impact. As stated in *Charlton v. Baker, supra* [61 Wn.2d 369, 378 P.2d 432 (1963)], such testimony does not constitute substantial evidence of speed.

But what is substantial evidence? In *Arnold v. Sanstol,* 43 Wn.2d 94, 260 P.2d 327 (1953), we said at 98:

> Substantial evidence is that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed. *Rettinger v. Bresnahan,* 42 Wn. (2d) 631, 633, 257 P. (2d) 633 (1953), and case cited.

and we added, at 99:

> A verdict cannot be founded on mere theory or speculation. If there is nothing more tangible to proceed upon than two or more conjectural theories, under one or more of which a defendant would be liable, and under one or more of which there would be no liability upon him, a jury will not be permitted to conjecture how the accident occurred.

and said further, at 101:

> Assuming that the speed of the cab was negligent, this same evidence, measured by the same standards, likewise cannot be said to have established that such speed was a proximate cause of the collision. Conjecture and speculation also must be relied upon to support this conclusion, which is essential to plaintiff's recovery even though this negligence of the cab driver is assumed.

The third and final bit of evidence from which excess speed may be inferred, includes the opinion by Trooper

Glenn Rudy of the Washington State Patrol that the legal speed was unsafe at the time. He testified that at the accident he found "compact snow and ice, overcast, no traffic control." He said that the Volkswagen, after hitting the Corvair, traveled 33 feet and the Corvair 93 feet, after being struck broadside. The Corvair, he said, "mushed out [snow], like a snow plow had taken it out" when it went up on the lawn.

It was then that the following colloquy took place:

A. This is a County Road, and a residential area, the speed limit is 25 miles an hour. Q. Do you consider that the maximum legal speed, or the safe speed in view of the conditions existing and the slipperiness of the streets? A. No sir. Q. Do you have an opinion, Officer, as to what a safe speed would be to traverse these intersections? MR. ELKINS: I object, Your Honor. This is pure conjecture. THE COURT: Sustain the objection.

There followed further colloquy and offer by defendant to prove that, in the trooper's opinion, the maximum safe speed was 15 miles per hour under the conditions prevailing at the accident. The trial court, however, sustained objection to this testimony.

The witness's opinion, given immediately prior to the court's ruling out all testimony of that nature, that he did not consider 25 miles per hour a safe speed, invaded the province of the jury. *Burns v. Dills*, 68 Wn.2d 377, 413 P.2d 370 (1966). It constituted a mere conclusion, argumentative in character, and supplied no affirmative evidence of excess speed nor any facts upon which excess speed could be inferred. The opinion of the officer thus trespassed upon the jury's duty to find the ultimate facts and did not constitute evidence of contributory negligence.

Even if the jury were allowed to speculate at what speed the plaintiff was traveling, how could it find that a few miles per hour, faster or slower than the statutory limit, was a proximate cause? To me the facts show that the sole and proximate cause of the accident was defendant's failure to yield the plaintiff the right of way. All of the evidence concerning plaintiff's excessive speed added together, I

think, amounted to no more than a scintilla of proof and was insufficient to support a finding of contributory negligence.

I think the judgment should be reversed with instructions to grant plaintiff a new trial on the issue of damages only.

ROSELLINI, J., concurs with HALE, J.

DONWORTH, J. (dissenting)—If this court is to entertain an affirmative defense of contributory negligence on the part of a favored driver, I can agree with Judge Hale's dissenting opinion.

However, I believe that the favored driver should not be barred from recovery in intersection accident cases except where there is deception on his part or where he had the last clear chance to avoid the collision. My reasons are stated in my concurring opinion in *Zahn v. Arbelo, ante* p. 636, 434 P.2d 570 (1967), in which I said:

> I would abandon rules of "relative" rights of way which have developed from *Martin v. Hadenfeldt, supra* [157 Wash. 563, 289 Pac. 533 (1930)], and, instead, bar recovery by the favored driver in only two circumstances; *i.e.* the true deception situation as described in *Mondor v. Rhoades,* 63 Wn.2d 159, 167, 385 P.2d 722 (1963), where the actions of the favored driver "deceive the reasonably prudent driver on the left to such an extent as to entrap him"; and in cases involving last clear chance. See *Barrett v. Inglin,* 46 Wn.2d 317, 281 P.2d 236 (1955), and cases cited therein.
>
> By such a ruling, this court would give substance to the rule, stated in the majority opinion, that "The favored driver on an arterial protected by a stop sign has one of the strongest rights of way which the law allows," and would return these right-of-way cases to their proper perspective.

I would apply this rule both with respect to accidents occurring at controlled intersections and uncontrolled intersections. The applicable statutes grant a right of way to the favored driver in either instance and impose upon the disfavored driver the duty to yield such right of way to him.

Therefore, I dissent from the majority opinion for two reasons: (1) there is no evidence of deception on the part of the favored driver in this case nor claim that he had a last clear chance to avoid the accident, and (2) if his alleged contributory negligence is to be considered, there is no substantial evidence in the case to support it.

I would reverse the judgment and remand for a new trial on the issue of damages only.