[No. 37810.    En Banc.    April 4, 1968.]

VINCENT J. BROZE, *Respondent,* v. RONALD RANDALL *et al., Appellants.*\*

\*Reported in 439 P.2d 406.

*Kahin, Horswill, Keller, Rohrback, Waldo & Moren* and *Fred R. Butterworth,* for appellants.

*Kumm, Maxwell, Petersen & Lee,* by *Raymond J. Petersen,* for respondent.

HALE, J.—Two automobiles collided at an uncontrolled intersection in Seattle, November 3, 1962. Plaintiff, the disfavored driver, says that he could not be deemed contributorially negligent as a matter of law in failing to yield the right of way because the defendant, approaching him from his right, was coming up a very steep hill. The steep hill, he contends, diminished his responsibilities under the right-of-way statute, and left the question of contributory negligence to the jury.

It was about 7:30 p.m. and dark, when plaintiff, driving his yellow, 1961 Porsche automobile, slowly north on 19th Street South in Seattle, with his wife as a passenger, approached the South Hanford Street intersection. A traffic sign facing him at the intersection cautioned all northbound traffic on 19th Street South to "Slow to 10 miles per hour." Plaintiff and his wife testified that plaintiff stopped before entering the intersection, looked to his left and right and then proceeded slowly. As the Porsche passed the center of the intersection, it was struck by the defendant's car coming up the steep hill from the right. Plaintiff said that he saw neither the defendant's vehicle coming up the hill nor its headlights.

Defendant, describing the accident, said that he drove up South Hanford Street—a very steep, cleated hill—toward the 19th Street intersection, in a white 1955 Ford sedan. He roughly estimated his speed at less than 25 miles per hour but not to exceed 35 miles per hour. He conceded that his car had faulty brakes, but believed that they took hold when he applied them at first sight of the yellow Porsche which suddenly crossed in front of him from his left in the intersection.

Defendant now appeals the judgment entered on a verdict for the plaintiff, presenting through two assignments a solitary claim of error that the trial court erred in failing to find that the plaintiff was contributorially negligent as a matter of law in failing to yield the right of way.

Both 19th Street South, on which plaintiff drove north that night, and South Hanford Street, on which defendant was driving west, are 25 feet wide, forming a 25-foot square at their intersection. The two streets are paved and long established, and, save for the steepness of South Hanford, represent at their junction an ordinary uncontrolled intersection. It was dark and each car had its headlights on.

Plaintiff and his wife, returning to the scene several days after the accident, made a number of measurements with a tape measure. Plaintiff testified that his Porsche stood 51 inches high from road to roof; that its axles rested on centers 13 inches above the pavement and that plaintiff driver sat at the wheel at a height which placed his eye level 42 inches above the pavement when driving. Basing their testimony on the measurements, they said that, when seated in the Porsche within the intersection, they could see the roof of defendant's car—a 1955 white Ford—for a distance of 102 feet down Hanford hill in daylight. Plaintiff testified too that, from the point where he had stopped to look to his right before going through the intersection, he would be able to see the lights of an approaching car at night for an estimated distance of 252 feet down the South Hanford hill.

Did the plaintiff fail as a matter of law to yield the right of way to a vehicle approaching from his right up a steep hill on South Hanford at about, or slightly in excess of, the maximum legal speed of 25 miles per hour? Plaintiff argues that the circumstances of topography, plus defendant's possible speed in excess of the maximum legal rate, in part relieve him of the onus of contributory negligence and make it a jury question. Because of the steepness of South Hanford, he contends, it was for the jury to decide whether he entered the intersection in the reasonably prudent belief

that he had a fair margin of safety as to any vehicles coming up the hill from his right.

In this case, however, we do not find evidence of any circumstance which relieved plaintiff of his duty to yield the right of way to defendant at that time and place. Whether the grade of South Hanford was steep, slight or level does not affect the application of the right-of-way rule on a paved, long-established street. How can it be said that the defendant driver, whose car could be seen by the plaintiff in daylight for 102 feet and whose lights at night for 250 feet in driving up a steep hill slightly in excess of the speed limit, so operated his car as to "create a deception tantamount to an entrapment," or did anything to "lure a reasonably prudent driver into the illusion that he has a fair margin of safety in proceeding into the intersection?" *Mondor v. Rhoades*, 63 Wn.2d 159, 385 P.2d 722 (1963).

That South Hanford was a very steep hill provides no basis for removing this case from the rules of *Mondor*. And evidence that defendant's car had faulty brakes and was moving up the hill at or possibly faster than the speed limit, while having a bearing on defendant's negligence, did not, under these circumstances, entrap plaintiff by luring him into the intersection.

Defendant's negligence is not an issue now, it having been fully resolved against him earlier. The only issue is that of plaintiff's contributory negligence in failing to yield the right of way. Even if it were established that defendant drove his car up the steep hill in excess of the lawful maximum speed, it could not be said, under the circumstances proved, that he operated his vehicle in such a manner as to instill in the disfavored driver on the left, an illusion that he had a fair margin of safety in proceeding through the intersection. The steepness of the hill and the favored driver's speed, even if somewhat in excess of the legal limit, did not dissipate plaintiff's obvious contributory negligence in failing to yield the right of way.

As we have noted, the hill was a very steep one, but not so steep as to enable a driver of ordinary prudence in the

city of Seattle reasonably to claim surprise that an automobile would be traversing it. South Hanford was but one of many well-established, regularly-used, steep streets and ways frequently encountered by automobile drivers in the cities of the Pacific Northwest. Thus, the steepness of a readily negotiable hill does not operate to work a dilution or diminution of duty resting upon the disfavored driver under the right-of-way statute. Indeed, the warning sign and the steepness of the hill on the right combined to require a high degree of vigilance from the plaintiff.

In this connection, one should note the categorical language in which the statute is phrased, "Every operator . . . *shall* look out for and give right of way to vehicles on his right." (Italics ours.) RCW 46.60.150 (now RCW 46.61.180). Although we decided not to make the right of way absolute in *Mondor, supra,* even though the statute admits of such a construction, we did emphasize that the right of way is a very strong rule, subject only to the exception of a deception tantamount to an entrapment—an entrapment sufficiently deceptive to lure a reasonably prudent driver into believing that he has a fair margin of safety in proceeding into the intersection.

Because defendant's car was there to be seen, coming from the right under no unusual condition or circumstances other than the hill—a commonplace situation in Seattle—plaintiff had no fair margin of safety in entering the intersection. As we said in *Novis v. Tipton,* 63 Wn.2d 473, 387 P.2d 737 (1963), we will not

> isolate the fair margin of safety rule from its context, insulate it against the application of physical facts and laws, and substitute the reasonably prudent-man test for the standard of care imposed by the statute. The line of cases relied upon by plaintiffs are distinguishable upon their facts, *e.g.,* time, distance, speed, and visibility. In any event, they are of limited and doubtful efficacy in the light of our decisions in *Chavers v. Ohad,* 59 Wn. (2d) 646, 369 P. (2d) 831, and *Mondor v. Rhoades, ante* p. 159, 385 P. (2d) 722.

Plaintiff's situation here comes directly within our statement in *Sanders v. Crimmins,* 63 Wn.2d 702, 706, 388 P.2d 913 (1964), where we said:

A disfavored driver's obstructed view of a favored vehicle does not constitute deception. *Shultes v. Halpin,* 33 Wn. (2d) 294, 205 P. (2d) 1201; *King v. Molthan,* 54 Wn. (2d) 115, 338 P. (2d) 338. It is the duty of a disfavored driver approaching an obstructed intersection to make his observations from a point at which he can clearly observe, not from a point back from the intersection where his view is materially impaired. *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371. Obstructions to view and adverse road and atmospheric conditions intensify, rather than diminish, the attentiveness and vehicular control required. The fact that a favored vehicle is unlighted, although otherwise visible, does not relieve the disfavored driver of his obligation to maintain a proper and effective lookout and to yield the right of way. The defense of deception is not open to one who did not see the favored vehicle until the instant before collision.

In *Gray v. Pistoresi,* 64 Wn.2d 106, 390 P.2d 697 (1964), we held so heavy upon the disfavored driver is the duty to yield the right of way to the favored driver that a sudden estimated increase in the favored driver's speed from 50 to 70 miles per hour did not give defendant any basis in law for claiming a fair margin of safety, citing *Mondor v. Rhoades, supra,* and *Charlton v. Baker,* 61 Wn.2d 369, 378 P.2d 432 (1963), with approval. Shortly thereafter, in *Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964), we said:

The conclusion is inescapable that defendant driver did not maintain the lookout required of one about to execute a left turn upon an arterial. Defendants' claim of entrapment must fall to the oft-repeated statement that a disfavored driver cannot be deceived by that which such driver does not see.

Defendants' counterclaim upon plaintiff's motion for directed verdict should have been dismissed and the jury instructed that defendant driver was guilty of negligence as a matter of law.

Accord: *Worthington v. Caldwell,* 65 Wn.2d 269, 396 P.2d 797 (1964) *Archibald v. Gossard,* 65 Wn.2d 486, 397 P.2d 851 (1965).

Plaintiff being contributorially negligent as a matter of law in failing to yield the right of way, we think this case falls within the precisely delineated statement pertaining to the right of way set forth in *Sanders v. Crimmins, supra,* that a disfavored driver's obstructed view of a favored vehicle does not constitute deception. The record establishes as a matter of law plaintiff's failure to yield the right of way to a vehicle approaching on his right.

Accordingly, the judgment will be reversed and the case dismissed.

HILL, WEAVER, ROSELLINI, and McGOVERN, JJ., concur.

FINLEY, C. J. (dissenting)—This is an action to recover damages for personal injuries and property damage arising out of an intersection automobile collision. The collision occurred at approximately 7:30 p.m., November 3, 1962, at the intersection of 19th South, and South Hanford Street. The two paved streets are 25 feet in width. The speed limit in this residential area of Seattle is 25 miles per hour, although a traffic sign near the intersection cautions northbound traffic on 19th Avenue to "Slow to 10 miles per hour."

The plaintiff was proceeding north on 19th Avenue, South, in a 1961 Porsche. The defendant was driving in a westerly direction on South Hanford Street in a 1955 Ford. It was dark at the time, and both cars were operating with lights on. The plaintiff and his passenger testified that they stopped at the intersection and looked left and right several times before proceeding. In looking to the right, neither the plaintiff nor his passenger saw an automobile or the headlights of an approaching vehicle. The defendant testified that he "wasn't going over 35."

South Hanford Street drops away from the intersection with 19th Avenue in a steep grade of approximately 21 per cent. The hill is so steep that in order to aid traction there are cleats on the street pavement and on both of the flanking sidewalks. The steepness of the hill prevented both defendant and plaintiff from being able to see each other until shortly before the defendant crested the top of the

hill. Further, it was the plaintiff's theory that the headlights of defendant's automobile were not visible because of the steep grade to the plaintiff's right on Hanford Street as he stopped, looked, and then proceeded into the intersection.

The defendant first became aware of the plaintiff's automobile—which was proceeding slowly through the intersection—when approximately one car length away as he crested the hill. The defendant admitted that his brakes were "down" and in need of repair. Although he was uncertain in this respect, the defendant thought that he applied the brakes, and that they had taken hold. The front of defendant's Ford struck the plaintiff's right rear fender at a point of impact about 27 inches off the ground. The force of the impact spun the plaintiff's car completely around in a 360 degree arc, moved the car across to the other side of the street, and pushed it up and onto the parking strip on the west side of 19th Avenue.

This appeal is from a judgment entered on a jury verdict in favor of the plaintiff. The *sole issue* raised by the defendant-appellant's two assignments of error is whether the trial court erred in failing to find that the plaintiff-disfavored driver was contributorily negligent as a matter of law in not yielding the right of way to the defendant-favored driver.

The standard of care which a disfavored driver must meet is a severe one. The basic principle is stated in *Mondor v. Rhoades*, 63 Wn.2d 159, 385 P.2d 722 (1963), namely, that a disfavored driver who fails to yield the right of way to a favored driver is potentially negligent as a matter of law. *See* RCW 46.60.150 (now RCW 46.61.180). Nevertheless, if a disfavored driver is deceived by the actions of a favored driver and the related circumstances so that he reasonably believes it is safe for him to proceed into an intersection, no negligence is imputed to him for failing to yield the right of way. *Ward v. Zeugner*, 64 Wn.2d 570, 392 P.2d 811 (1964).

If there is evidence from which a jury could reasonably conclude that a disfavored driver was deceived, the case is

one for the jury and not for the court. In the instant case evidence was introduced showing that the plaintiff-disfavored driver exercised reasonable precautions, that he looked both ways carefully from a proper vantage point and saw all that was there to be seen, that it was not possible for him to see the defendant's lights until the defendant had almost crested the hill, and that it was the defendant's excessive speed and poor brakes as well as the steepness of the hill which were the proximate causes of the accident, rather than any acts or omissions by the plaintiff. The evidence of deception presented in this case was sufficient to warrant submission of the issue of the plaintiff's contributory negligence to the jury. Thus, it is improper for this court to now substitute its own judgment for the jury's on this matter. *Phelps v. Wescott,* 68 Wn.2d 11, 410 P.2d 611 (1966). Such a response by this appellate court usurps the function of the jury, and it is for this reason I dissent.

The majority rely upon *Novis v. Tipton,* 63 Wn.2d 473, 387 P.2d 737 (1963) for the proposition that a disfavored driver will not be heard to say that he looked and did not see that which was there to be seen. In *Novis,* the visibility was unimpaired and the view of a driver whose car was at a proper vantage point was unobstructed; *i.e.,* although each disfavored driver said he did not see the other car, *it is clear that he should have seen it.* But because of the *particular conditions and circumstances* pertaining to the street intersection *in the instant case,* I am convinced that its *unique fact pattern is not comparable to the ordinary, "garden variety" intersection collision* case. To be more explicit, there is substantial evidence in the record that *from the best possible vantage point* the plaintiff-disfavored driver could not, and did not, see the car being negligently operated by the favored driver until it was too late for him to do anything to avoid the collision.

I reiterate: *The facts clearly distinguish the instant case.* The aforementioned steep grade of South Hanford Street restricted the north-bound plaintiff-driver on 19th Avenue from obtaining an unobstructed view of oncoming traffic.

The distance from the intersection of South Hanford and 19th Avenue South down to the near curb of 20th Avenue South at the bottom of the hill is approximately 252 feet. The length of the hill itself is somewhat less as, for one thing, it does not begin until 17 feet east of the east curb line of the intersection in question. The evidence seems to indicate that the hill was traversed by the defendant at an excessive speed of *at least* 25 to 35 miles per hour, while the plaintiff was proceeding slowly across the intersection to the point of impact.

Both the plaintiff and his passenger testified that they did not see the lights of defendant's car until perhaps just an instant before impact although they both looked carefully to the right and left before entering the intersection while stopped at the south curb line, the best available point of observation. The evidence as to the topographical features of the area seems to support the likelihood of this testimony, since the beam of defendant's headlights would most likely have been first focused at the bottom of the hill and then, as his car began climbing the incline, they would most likely have been focused in such a manner as to go over the eye level of the passenger and driver in plaintiff's car.

Mr. Jack, a defense witness, testified that as he was driving east on South Hanford toward the intersection in question just prior to the collision, down what was later found to be a 1.3 per cent grade, he saw "lights or the beam of lights" of the defendant's car. He stated he saw this while he was still a considerable distance from the intersection and before the defendant's car crested the hill. Mr. Jack was acquainted with the defendant, a young man who had taken Mr. Jack's daughter out on dates. In fact, the defendant went to the Jack's home immediately after leaving the scene of the collision. The members of the jury, of course, could attach whatever weight they wished to Jack's testimony. Apparently they attached very little weight to it.

In any event, the resulting issue of fact is obvious, *viz.*, whether or not the steep hill obscured the headlights of the oncoming (favored) vehicle so that they could not be seen

by those in the plaintiff's car until the defendant's car crested the hill. There was substantial evidence from which the jury could have found that the favored driver's car was not plainly visible and *in fact was hidden from the most careful observation until an instant before impact.* At the very least, there was sufficient evidence to create a jury question on the matter so that this court certainly should not hold, as a matter of law, that the plaintiff was contributorily negligent in failing to see the defendant's headlights before he entered the intersection. The rule announced in *Roberts v. Leahy,* 35 Wn.2d 648, 651, 214 P.2d 673 (1950), is apropos:

"A number of times this court has held that, when a person testifies that he looked and did not see an object, which plainly he could have seen, that he will not be heard to say that he looked and did not see. In other words, the situation is the same as though he had looked and seen the object." *Silverstein v. Adams,* [134 Wash. 430, 235 Pac. 784] *supra.*

This rule is not applicable in the instant situation, where the issue of fact is whether or not this condition in the traveled part of the street hid the favored vehicle. *Testimony that the disfavored driver looked and did not see it, if believable, is evidence that it was hidden. It raises a question of fact for the jury to determine.* (Italics mine.)

I think that the reasoning and the principle of law indicated in *Cauble v. Dahl,* 48 Wn.2d 440, 442, 294 P.2d 416 (1956) are also apposite in the instant case and support the refusal of the trial court to rule that the plaintiff was contributorily negligent as a matter of law. In *Cauble,* this court stated:

Because of the conflicting testimony relative to the question of visibility and the conflicting testimony relative to appellant Dahl's speed, we cannot say as a matter of law that respondent Cauble failed to make allowance for a sufficient margin of safety in entering and proceeding across the intersection. In other words, under the facts, the question of contributory negligence on the part of the respondent [disfavored driver] was a proper one for the jury.

So in the present case it was a question for the jury as to whether the plaintiff, as the disfavored driver, discharged his primary duty of exercising reasonable care to avoid any possible accident. *Fetterman v. Levitch,* 7 Wn.2d 431, 109 P.2d 1064 (1941); *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533 (1930). The jury could well have believed the plaintiff's testimony as to the absence of indications that any vehicle was coming up the hill on South Hanford Street.

The majority also place reliance on *Sanders v. Crimmins,* 63 Wn.2d 702, 388 P.2d 913 (1964). The *Sanders* decision is similar to that in *Novis v. Tipton, supra,* in that, although the disfavored driver's view was obstructed by a bank, a house, and a tree at the point from which he looked—and his range of observation was thus limited to 60 to 80 feet—he could and should have proceeded to a much superior vantage point before entering the intersection. For this reason, the court observed, 63 Wn.2d at 706:

> It is the duty of a disfavored driver approaching an obstructed intersection *to make his observations from a point at which he can clearly observe, not from a point back from the intersection where his view is materially impaired.* (Italics mine.)

That the *Sanders* case is inapposite to the instant matter is patent. In the present case, the plaintiff-disfavored driver discharged the duty breached in *Sanders,* or so the jury could have found, by making his observations *from the best possible vantage point.* No case law or statute is cited which requires a driver to alight from his car and walk to the brow of a hill to insure that no driver is negligently charging up the hill toward him. *Cf. Pokora v. Wabash Ry.,* 292 U.S. 98, 78 L. Ed. 1149, 54 Sup. Ct. 580, 91 A.L.R. 1049 (1934).

The majority assert that the doctrine set forth by us in *Mondor v. Rhoades,* 63 Wn.2d 159, 385 P.2d 722 (1963) compels a conclusion that the plaintiff was contributorily negligent. A harder or, perhaps, more sensitive and discriminating look at that case is clearly indicated. The collision giving rise to that litigation occurred "in an uncon-

trolled, open, right-angle intersection in Yakima." There is no indication in the opinion that the intersecting streets were anything but straight and level. Although the fact pattern is clearly distinguishable, it does seem worthwhile to further examine this leading case. One portion of the opinion, appearing at 63 Wn.2d at 167, is particularly appropriate:

> We know that the right of way granted to the driver on the right is a strong one and ought not to be lost in the maze of details arising from split-second computation of time and distance. But *it is not an absolute.* The law, like life itself, has room for few absolutes, and we are fearful of granting one here. Room must be left for the extreme case, the case where the driver on the left is able to demonstrate that the favored driver so wrongfully and negligently operated his car as to create a deception tantamount to an entrapment, *a deception of such marked character as to lure a reasonably prudent driver into the illusion that he has a fair margin of safety in proceeding into the intersection and on through it.*
> . . .
> Seventeen [now nineteen] sessions of the legislature have met since *Martin v. Hadenfeldt, supra,* became the law in 1930, and that they have considered traffic problems at intersections is shown by amendments to the section, yet leaving the rule of the road and deception phase of the case undisturbed. See Laws of 1937, chapter 189, § 88, p. 899; Laws of 1955, chapter 146, § 3, p. 645; and Laws of 1961, chapter 12 (RCW 46.60.150), p. 389. If the legislature wishes to make the right of way absolute, they may do so in express language. We must decline. (Italics mine.)

It seems difficult to conceive of a more clear-cut example of an "extreme case" in which the driver on the left is able to demonstrate that the favored driver operated his car so wrongfully and negligently as to create "a deception of such marked character as to lure a reasonably prudent driver into the illusion that he has a fair margin of safety in proceeding into the intersection and on through it." Surely by saying the plaintiff in this case has not met his burden of proof, this court is doing what the legislature has declined to do, namely, make the right of way absolute.

None of the cases cited by the majority[1] changes the role of *Mondor* or requires a different result in the present case involving, as it does, the extreme situation in which a very steep hill blocked the disfavored driver's view from even the best possible vantage point. There are, of course, occasional statements that a disfavored driver cannot be deceived by what he does not see. But examination of the cases shows that these decisions invariably involved a disfavored driver who *could* and *should* have seen the favored driver, *if he had looked as he said he did*,[2] or, *if he had looked from a better vantage point.*[3]

To reiterate, in the instant case there was substantial evidence from which the jury could have determined that the plaintiff-disfavored driver looked from the best possible

[1] The majority cite *Gray v. Pistoresi*, 64 Wn.2d 106, 390 P.2d 697 (1964), of which they make the following statement:

In *Gray v. Pistoresi* . . . we held so heavy upon the disfavored driver is the duty to yield the right of way to the favored driver that a sudden estimated increase in the favored driver's speed from 50 to 70 miles per hour did not give defendant any basis in law for claiming a fair margin of safety . . . .

That this is a somewhat strained if not distorted reflection of the case is shown by focusing further upon what the court actually said, 64 Wn.2d at 112:

*We are satisfied the record is barren of any evidence, beyond a mere scintilla, to establish that the plaintiff increased his speed subsequent to his first observance by the defendant,* and thereby creating a deception tantamount to an entrapment of the defendant. The trial court should have held the defendant was negligent as a matter of law in failing to yield the right of way to the plaintiff. (Italics mine.)

[2] See *Novis v. Tipton*, 63 Wn.2d 473, 387 P.2d 737 (1963); *Smith v. Laughlin*, 51 Wn.2d 740, 321 P.2d 907 (1958).

[3] Again and again where the facts disclosed that the disfavored driver's view was obstructed by such things as houses, buildings, trees, shrubbery, hedges, brush, walls, parked automobiles, and vehicles waiting in the intersection to turn, it has been decided that the presence of an obstruction imposes upon the driver on the left the duty to proceed carefully to a point at which he *can* gain an unobstructed view of the street to his right, and to do any less amounts to contributory negligence as a matter of law. (Citing cases for each type of obstruction.) Comment, *Contributory Negligence of the Disfavored Driver Under the Right of Way Statute*, 26 Wash. L. Rev. 30, 37-38 (1951).

vantage point and saw no indication of any vehicle approaching because of the steep grade of the hill. He did not see the disfavored driver's car, *but he did see a street clear of cars for as far as he could see from the best possible vantage point, and this, plus the speed of the favored driver, is what deceived him into thinking he had a fair margin of safety in proceeding into and through the intersection.*

The majority suggest that there is nothing unusual about the steepness of the hill in question. As indicated previously, the record shows that South Hanford Street, as it drops away from the intersection with 19th Avenue, has a grade of approximately 21 per cent. There is no indication in the record of how many streets in Seattle or elsewhere are steeper than that. However, plaintiff's exhibit No. 2, which was duly admitted into evidence, is a photograph of South Hanford Street in the block east of 19th Avenue. It shows that the hill is very steep and also that the pavement of the street and the two parallel sidewalks are heavily cleated to provide traction for ascending vehicles and pedestrians. This is the street which the majority describe as "but one of many well-established, regularly-used, steep streets and ways frequently encountered by automobile drivers in the cities of the Pacific Northwest" up which the defendant was driving at a speed which he admitted might have been up to 35 miles per hour. Such speed on South Hanford Street's rough pavement is surely conducive neither to good digestion nor to good vision and control.

The majority also refer to a 102 foot view of cars coming up Hanford from the right, which subsequent measurements showed the plaintiff-disfavored driver might have had of the defendant's car. It should first be pointed out that 102 feet was the distance at which a person seated in the plaintiff's car could in daylight first see *the top* of an average sedan proceeding up South Hanford Street. Further, I note again that there was sufficient evidence to support a jury determination (and thus this court should not hold otherwise as a matter of law) that, because of the

unusual topography, the plaintiff could not see the headlights of the defendant's car until it had proceeded somewhat further up the hill toward the collision.

For purposes of argument, however, I will consider this maximum 102 foot distance referred to by the majority. At 35 miles per hour, the defendant would have covered the 102 feet in 1.99 seconds, at 30 miles per hour in 2.32 seconds, and at 25 miles per hour in 2.79 seconds. The intersection was 25 feet wide from curb line to curb line. The plaintiff's car was approximately 158 inches in length, or somewhat more than 13 feet. Dr.-In. h. c. F. Porsche KG., *Porsche Driver's Manual* 28 (July 1963). Thus, if the plaintiff halted his car at the best possible vantage point before actually encroaching upon the intersection, *i.e.* the curb line, his car would have had to travel at least 38 feet before his rear bumper cleared South Hanford Street.

As previously stated, near the intersection and facing the plaintiff as he approached was a sign which read "Slow to 10 miles per hour." There was also testimony from which the jury could have found that the plaintiff's car reached a maximum speed of about 10 miles per hour as it crossed the intersection. If the plaintiff had accelerated from 0 to 10 miles per hour in zero seconds (which is impossible) and then held that speed across the intersection, it would have taken 2.59 seconds before his car cleared the intersection on the other side. This, of course, is less than the time it would have taken the defendant to cover the 102 feet—from what very likely was *the first possible point at which the top of his car was visible to the plaintiff* to the point of impact—at a speed of 35 or even 30 miles per hour. If it took the plaintiff, say, 7.33 feet to accelerate from a dead stop to 10 miles per hour, and the plaintiff averaged a speed of 5 miles per hour in covering this 7.33 feet, then 3 full seconds after the plaintiff started his car after stopping to observe at least 1 foot, 4 inches, of his car would still have been extending into the intersection and vulnerable to being hit. In less than 3 seconds, of course, a car traveling even 25 miles per hour would have covered the 102 feet.

The mathematical calculations set forth above are not intended as an attempt to prove that it was mathematically impossible for the plaintiff to avoid the accident once he had legally and justifiably ventured into the intersection. Indeed, because of the many variables which can never be established with certainty—since speeds vary, estimates are often inaccurate, cars do not always drive in straight lines, etc.—mathematical certainty in such cases is an illusion.[4] It seems that the calculations do give some support, however, for the proposition that this court appears to now follow the rule that a man who has done all that could conceivably be required of a prudent driver in entering an intersection is contributorily negligent by virtue of the fact that the negligent driver who ran into him came from the right side.

A helpful analysis of a case such as the instant matter may be obtained by viewing the situation in terms of proximate cause. When, as here, there is substantial evidence that the disfavored driver did all that could be reasonably required of a cautious, prudent driver, and an accident nevertheless ensues when a speeding driver driving with brakes he knows to be "down" runs into the disfavored driver, it becomes apparent that the defendant's high speed and careless driving were the proximate causes of the collision. *See* Fitzgerald, *Right of Way at Highway Intersections in Washington,* 9 Wash. L. Rev. 19, 29-30 (1934); *Hines v. Foster,* 166 Wash. 165, 6 P.2d 597 (1932); *Murphy v. Hunziker,* 164 Wash. 40, 2 P.2d 270 (1931).

One final point should be mentioned. The theory, implicit in much legal writing on intersection right of way, that most drivers keep this court's advance sheets in their glove compartments for ready reference, and that, therefore, tightening up the right-of-way rule will help diminish the

---

[4]This court made the following observation in *Harmon v. Merrick,* 62 Wn.2d 171, 175, 381 P.2d 614 (1963), per Hale, J.:

Indeed, by selecting the right set of variables and applying the proper arithmetical computations to them, it can be proved mathematically that the vehicles did not collide and that the accident did not happen.

present situation of "race to the intersection," which is assumed to exist, is of doubtful validity at best. *See* Fitzgerald, *Right of Way at Highway Intersections in Washington, supra,* at 20. Even assuming our decisions have considerable effect on the driving of the average citizen driver, there are certainly other dangers than "race to the intersection" to be considered. As was pointed out in *Martin v. Hadenfeldt, supra,* an absolute right of way might well have the effect of causing prudent disfavored drivers to block traffic by waiting inordinate amounts of time before taking the chance of crossing an intersection in which a negligent favored driver conceivably might be careening toward them. Also, such a rule would encourage careless and negligent driving, particularly by favored drivers approaching a T-intersection where the intersecting road enters from the left. The better rule protects the prudent driver who does all that can be reasonably expected of him.

The question before this court, of course, is whether the plaintiff must be held contributorily negligent as a matter of law for failing to produce sufficient evidence to show deception or entrapment.[5] In my opinion, more than adequate evidence of deception or entrapment was presented to prevent such a holding. It is thus incorrect to find the plaintiff negligent as a matter of law.

Although no added support should be necessary, I refer to the language of a case relied upon by the majority, *Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964), a case actually not in point factually because it falls into the category of those cases in which, if the driver had looked properly, he would have seen the other car. In *Ward,* 64 Wn.2d at 573, the court noted:

> Entrapment of the disfavored driver is thus predicated upon two circumstances: (a) The favored driver's negligent operation, and (b) the concealment thereof from

---

[5] In approaching such problems, it should be remembered that the terms "deception" and "entrapment" are drawn from other areas of the law and should be used in this context only with the greatest caution. *See* Fitzgerald, *Right of Way at Highway Intersections in Washington, supra,* at 32.

prudent view by an obstruction. See *Roberts v. Leahy*, 35 Wn. (2d) 648, 214 P. (2d) 673.

In the trial of the instant matter, however, no instruction on deception or entrapment was given. The plaintiff-disfavored driver did propose such an instruction, and he excepted to the trial court's failure to give it. The defendant-favored driver took no exceptions relevant to this point, nor is there any error assigned to the trial court's instructions on this appeal.

A general instruction on intersection right of way (actually a paraphrase of the first three rules from *Martin v. Hadenfeldt, supra*), which placed the primary duty of avoiding an accident on the plaintiff-disfavored driver, was given. On the basis of the instructions given, the jury returned a verdict for the plaintiff. While a deception or entrapment instruction would have been proper (specifically the fourth rule from *Martin v. Hadenfeldt*), the question of the instruction has not been raised and is, therefore, not before this court.

The judgment of the trial court entered on the jury verdict should have been affirmed, and I therefore dissent from the majority opinion.

HUNTER, HAMILTON, and NEILL, JJ., concur with FINLEY, C. J.