[No. 26398.   Department One.   November 9, 1936.]

CHARLES A. TYLER *et al., Appellants,* v. PIERCE COUNTY, *Respondent.*[1]

*R. L. Bartling* and *George F. Hannan,* for appellants.

*Harry H. Johnston* and *John E. Belcher,* for respondent.

BLAKE, J.—While going from Orting to Sumner, a truck in which plaintiff Susan Tyler was riding

[1] Reported in 62 P. (2d) 32.

skidded from the road and turned over. Mrs. Tyler sustained injuries for which she seeks to recover damages from Pierce county. At the close of plaintiffs' evidence, defendant interposed a challenge to the sufficiency of the evidence, which the court sustained. From judgment dismissing the action, plaintiffs appeal.

The only question to be determined is whether the county was chargeable with negligence in the maintenance of the highway at the point where the accident occurred.

For some distance on both sides of the point of accident, the highway parallels the tracks of the Buckley branch of the Northern Pacific Railway Company. Between two and three miles north of Orting, the highway runs along the west side of the railroad track. It then makes an abrupt turn right and crosses the track. There it makes an abrupt turn left, and proceeds northerly along the east side of the track. The truck in which plaintiff was riding failed to negotiate the right turn. It skidded off the left side of the highway on the west side of the railroad track.

The highway has a bitulithic (black top), smooth surface pavement for a width of about seventeen feet. Outside the pavement are dirt shoulders about four feet in width, which, at the point of accident, slope into a depression three or four feet below the level of the road. The highway was constructed in 1916. Where it turns to cross the railroad track, the curve is "flat"—the super-elevation of the west side of the pavement being only six inches. Two hundred feet south of the curve, there was a sign post, at the top of which was a "R. R." crossing sign. Below that was a "Curve" sign, which was very much obscured by the foliage of undergrowth. A guard rail, consisting, as originally constructed, of ten panels, ex-

tended along the outside of the curve. Two or three panels at the end near the railroad track had been broken down sometime prior to the accident.

The truck left the highway at a point where the guard rail had been broken out. The accident occurred at eleven-thirty a. m. Rain had fallen intermittently all morning, and the pavement was wet and slippery. The driver of the truck testified that he started into the curve at a rate of ten to fifteen miles an hour; that, on account of the slippery condition of the road, the truck began to skid, and he lost all control over it. There is no claim that there was any obstruction above or in the surface of the pavement that contributed to the accident. The charges of negligence are of what may be termed a more fundamental character. They are: (1) That the highway as constructed was inherently dangerous, in that (a) the curve was too "flat," and (b) the surface of the pavement could and should have been roughened so as to prevent skidding; (2) that a guard rail or barrier of sufficient strength to prevent vehicles from breaking through should have been maintained; (3) that undergrowth should not have been permitted to obscure the "Curve" sign.

As to the first charge of negligence in each aspect, this court is committed to a rule contrary to appellants' position. In *Davison v. Snohomish County*, 149 Wash. 109, 270 Pac. 422, it was held that the county was not liable in the maintenance of a bridge approach, the deck of which sloped toward the *outer* edge of a curve. In *Gabrielsen v. Seattle*, 150 Wash. 157; 272 Pac. 723, 63 A. L. R. 200, the court said:

"It is common knowledge, also, that rain falling upon the oil and grease deposited upon paved high-

ways increases their slipperiness, and increases the danger of operating automobiles over them.

"But as these things are known to every operator of an automobile, the courts would not, in the absence of proofs of an unusual condition, permit the operator himself to recover against the public body, whose duty it is to keep the highways in repair, for an accident arising out of a slippery condition caused by these means; this for the reason, if for no other, that the operator knows the conditions, and in using the streets so knowing the conditions, takes upon himself the risk of injury arising therefrom."

A different rule would make the municipality an

". . . insurer against every accident on its streets—in effect, an insurer of the tractability of every team and automobile driven on its streets." *Swain v. Spokane,* 94 Wash. 616, 162 Pac. 991, L. R. A. 1917D, 754.

With respect to the second and third charges of negligence, this court has considered the obligation of municipalities to maintain barriers and post signs under varying circumstances. An analysis of the decisions will show that there is no such duty, unless (a) prescribed by law (*Lyle v. Fiorito,* 187 Wash. 537, 60 P. (2d) 709), or (b) the situation is inherently dangerous or of such a character as to mislead a traveler exercising reasonable care (*Neel v. King County,* 53 Wash. 490, 102 Pac. 396).

The appellants apparently recognize the rule, but contend that this case falls within the latter exception to it. There are several decisions of this court in which the exception has been expressly or impliedly recognized and applied. But none of such cases bears a sufficiently close analogy in fact to the situation here presented to call for discussion.

On the other hand, we think the facts in this case present a situation common to most of the highways

in the state, and call for an application of the rule, rather than the exception to it. The rule as applied in *Leber v. King County,* 69 Wash. 134, 124 Pac. 397, 42 L. R. A. (N. S.) 267, *Swain v. Spokane,* 94 Wash. 616, 162 Pac. 991, L. R. A. 1917D, 754, and *Wessels v. Stevens County,* 110 Wash. 196, 188 Pac. 490, is applicable here. In the first case cited, the court stated the rule as follows:

"Here we have a road graded and in repair, fifteen feet wide, which is wide enough for all ordinary travel unless it be in the populous centers of the state. We think it will require no argument to make plain the fact that here there was no extraordinary condition or unusual hazard of the road. A similar condition is to be found upon practically every mile of hill road in the state. The same hazard may be encountered a thousand times in every county of the state. Roads must be built and traveled, and to hold that the public cannot open their highways until they are prepared to fence their roads with barriers strong enough to hold a team and wagon when coming in violent contact with them, the condition being the ordinary condition of the country, would be to put a burden upon the public that it could not bear. It would prohibit the building of new roads and tend to the financial ruin of the counties undertaking to maintain the old ones. *The unusual danger noticed by the books is a danger in the highway itself.*" (Italics ours.)

In *Wessels v. Stevens County, supra,* the rule as stated was held applicable where the negligence charged was in the failure to maintain a warning sign.

■ Appellants assign error upon the refusal of the court to permit proof of other accidents at the same curve. In support of their contention that they had the right to prove other accidents, appellants cite *Smith v. Seattle,* 33 Wash. 481, 74 Pac. 674. The court in that case was dealing with an obstruction in a sidewalk. Proof was made that persons other than

plaintiff had stumbled over the same obstruction. The evidence was held admissible for two purposes: (a) To show constructive notice to the city of the obstruction, and (b) as descriptive of the condition of the sidewalk. It was not held that such evidence was admissible to prove negligence, although the court quoted language from *District of Columbia v. Armes,* 107 U. S. 519, 2 S. Ct. 840, 27 L. Ed. 618, to the effect that proof of other accidents was admissible for that purpose.

We are not willing to go beyond the limits within which the court specifically circumscribed such evidence in the *Smith* case. For such purposes, the evidence offered in this case was immaterial, because the negligence charged related to alleged structural deficiencies in the highway—not to any obstruction or defect in the surface of the road. On the one hand, the county, if liable at all for structural deficiencies, would be chargeable with knowledge of them, without proof of notice; on the other, the structural condition of the highway was subject to proof by observation of witnesses and the expert testimony of engineers. In fact, such evidence was introduced, without objection, at the trial. Under the circumstances, evidence of other accidents would simply introduce collateral issues, involving an expedition into the conditions under which such accidents occurred, the speed of the vehicles, and care of the drivers. The proffered evidence was properly excluded.

Judgment affirmed.

MILLARD, C. J., MAIN, STEINERT, and GERAGHTY, JJ., concur.