[No. 28048. Department Two. January 13, 1941.]

DAVID E. JOHANSON, *Appellant,* v. KING COUNTY, *Respondent,* FIORITO BROS., INC., *Defendant.*

CAROL MARION RIAN, *as Administratrix, Appellant,* v. KING COUNTY, *Respondent,* FIORITO BROS., INC., *Defendant.*[1]

[1] Reported in 109 P. (2d) 307.

*Ballinger, Hutson & Boldt,* for appellants.

*B. Gray Warner* and *F. M. Reischling,* for respondent.

JEFFERS, J.—As the result of a collision between a car driven by Leif Peter Rian, now deceased, and one driven by Claire Tholstrup, on Holman road, in King county, Washington, on December 23, 1938, three actions were instituted against King county and Fiorito Bros., Inc., a corporation: One by David H. Johanson, who was riding as a guest in the Rian car, for personal injuries claimed to have been received as a result of the collision; one by Carol Marion Rian, administratrix of the estate of Leif Peter Rian, deceased, to recover for the death of Leif Rian, for and on behalf of herself personally, she being the widow of the deceased, and for and on behalf of the Leif Peter Rian estate; and one by Claire Tholstrup, to recover for damages to his car and injuries to himself personally as the result of such collision.

In both the Johanson and Rian complaints, it is alleged that defendant King county was negligent in the following particulars:

"(1) In failing to place a yellow traffic stripe down the center of the aforesaid highway after the same was widened and before the same was opened to vehicular traffic.

"(2)  In failing to obliterate the yellow traffic stripe previously existing on said highway before the same was opened to vehicular traffic after being widened.

"(3)  In failing to place warning signs, barricades, directional signs or warning lights at or near the said highway, or any other measures of any nature to warn persons or vehicular traffic using said highway that the yellow line or traffic stripe on said highway did not constitute or mark the center thereof, notwithstanding defendant King County, through its agents and employees, knew, or in the exercise of reasonable care should have known, that the failure to take such precautions created a dangerous condition and, in fact, a trap for one using said highway.

"(4)  In opening said highway to vehicular traffic notwithstanding the existence of the aforesaid conditions and the dangerous situation thereby created."

In view of the fact that the jury found in favor of defendant, Fiorito Bros., Inc., and no appeal was taken from the judgment subsequently entered, in so far as this defendant is concerned, no reference need be made to the allegations of negligence as to this defendant, or the answer of such defendant.  Neither will it be necessary to refer to the pleadings of plaintiff Claire Tholstrup, in view of the fact that this plaintiff did not appeal from the judgment of the trial court dismissing his action and awarding costs to defendants.

King county answered the complaints of the respective plaintiffs, denying all allegations of negligence and alleging affirmatively that, if the respective plaintiffs suffered any injury or damage, such injury or damage was not caused through any fault, neglect, or negligence on the part of King county, but only through the fault, neglect, and negligence of the deceased, Leif Rian, the driver of the car in which plaintiff Johanson was riding, or by the negligence of Claire Tholstrup.

The respective plaintiffs denied the affirmative allegations contained in the answer of King county.

The three actions were consolidated for the purpose of trial and thereafter came on for hearing before a court and jury. On December 18, 1939, the jury returned a verdict in favor of each of the plaintiffs and against King county only. On December 20, 1939, defendant King county filed a motion for judgment notwithstanding the verdict and alternative motion for new trial in each of the three cases. On February 7, 1940, counsel for plaintiff Johanson and plaintiff Carol Rian moved the court for judgment in their favor in accordance with the verdict of the jury in each case, and notwithstanding the oral decision of the court. On February 17, 1940, the court granted King county's motion for judgment notwithstanding the verdict in each of the three cases, and dismissed the complaint in each action. On the same date, the court entered an order granting King county's motion for new trial in each case. The court also, on February 17th, denied the motions of plaintiffs Johanson and Rian for a new trial against Fiorito Bros., Inc., and also denied the motion of plaintiffs Johanson and Rian for judgment notwithstanding the oral decision of the court.

On March 16, 1940, separate notices of appeal were served and filed by plaintiffs Johanson and Carol Rian, from the judgment of dismissal entered on February 17th. It was stipulated that the two actions last above mentioned be consolidated for the purpose of this appeal.

Appellants' assignments of error are based upon the following grounds:

(1) The trial court erred in granting respondent's motion for judgment notwithstanding the verdict in each and both of the cases.

(2) The trial court erred in granting respondent's motion for a new trial in each and both of the cases.

(3) The trial court erred in entering judgment in favor of respondent, and in refusing to enter judgment on the verdicts in favor of appellants in each and both of the cases.

A consideration of appellants' first assignment of error requires a discussion of the evidence, and in such discussion we have in mind the rule that, appellants having obtained jury verdicts in their favor, all conflict in the evidence must be resolved in favor of appellants, and all inferences from evidence in the light most favorable to appellants.

We shall first endeavor to describe Holman road in such a way that our subsequent reference to it will be understandable. Holman road No. 1, which is just north of the city limits of Seattle, was originally constructed between Fifteenth avenue N. W. and Greenwood avenue, to a width of twenty feet, but was so constructed that an additional strip twenty feet wide could be added, thus making a forty foot pavement. To provide for drainage, the original twenty foot concrete road was built five inches higher on the south edge than on the outside or north edge. Prior to the time of the accident in question, a twenty foot strip of concrete was added to the original pavement, with a five inch crown in the center, and sloping from the center to either side of the road.

Holman road runs in a northeasterly direction from Fifteenth avenue N. W. and west Eighty-sixth street, for a distance of 7,114 feet, to where it joins Greenwood avenue. As Holman road was constructed and being used on the night of the accident, it consisted of four lanes, each ten feet wide, separated by dummy joints. In order that we may have these lanes more clearly in mind, we will designate as No. 1 the lane

farthest to the right and north, looking southward from Greenwood avenue; the next lane to the left, No. 2; the next lane to the left, which would be the first lane on the new twenty-foot pavement, No. 3; and the lane farthest to the left, No. 4. There were three dummy joints in this highway, composed of compressed felt and asphalt, one in the center of the highway, between the old and new pavement, and one in the center of the northerly, and one in the center of the southerly, half of the pavement. These joints were clearly distinguishable to traffic.

Upon Holman road, as originally constructed, there was a yellow line running down the center of the twenty-foot strip, and this line was still there at the time the new pavement was opened for traffic. There was no yellow line down the center of the pavement between the new and old pavement, and no yellow line dividing the new pavement.

About a week before the accident, an inspector in the employ of King county had ordered the barriers removed and the new pavement opened for traffic. Clearly, because of this evidence the jury were justified in releasing Fiorito Bros., Inc., the company which constructed the new pavement, from liability herein, and no contention is made by appellants to the contrary.

The only direct testimony in this case as to how and where the accident happened, was that given by plaintiff Tholstrup. While Leo Z. Zuber was riding in the car with Tholstrup at the time of the accident, he testified he knew nothing about how or where it happened. Mr. Rian, the driver of the car which collided with the Tholstrup car, was killed, and appellant Johanson, who was riding in the Rian car, was knocked unconscious and remembered nothing about the accident, and did not know what streets the Rian car

traveled to get onto Holman road, or anything about it.

Tholstrup testified that he was driving southwesterly from Greenwood avenue on the old strip of pavement, to the left of the yellow line (lane 2); that while he was so proceeding, at about forty to forty-five miles per hour, he had been meeting cars. Referring to the scene of the accident, the witness testified in response to questions as follows:

"A. I believe there was two cars there and all of a sudden this other car loomed up from behind and I just saw the lights and that crash and that is all there was to it. Q. How many cars, if any, had you passed from the time you entered Holman road No. 1 until the scene of this collision? A. Gosh, that would be. hard to say. Not very many. There was not much travel at that time of night anyway. Q. Do you remember passing any cars after you entered Holman road until you met the two cars which preceded the car which struck you? A. No, I don't remember of any. I might have passed some but I just was not paying attention. Q. When do you first recall having seen the two cars that preceded the car that struck you? A. When I was right there; they was all right in that bunch; it seemed to me. Q. Did you notice the cars that preceded the car that struck you two blocks or three blocks? A. Oh, I could see it for quite aways. Q. What lane were those two cars traveling in? A. They were traveling in the one right next to the center coming up [lane 3]. Q. That would be on which side, the north or south side of the highway? A. They were traveling in the left lane of the southern section of the highway coming to me [lane 3]. Q. In other words they were traveling immediately south of the middle of the 40-foot highway, is that right [lane 3]? A. Yes. Q. And you were traveling immediately north of the middle of the highway [lane 2]? A. Right. Q. Now where were you with respect to the position of the two when you saw the car that struck you the first time? A. I must have been almost even with the car that they came out from behind; almost even when they came out from behind that car. Q. Had you seen either his car or his

lights or anything that you can remember about the car that struck you before that time? A. No. Q. What did you do after you saw this car? A. I didn't have time to do anything, it just happened is all. Q. Where did your car end up? A. Over here on the right hand side of the road. Q. Have you any idea where this car came from that struck you? A. No, sir. . . . Q. You hadn't you say passed any other car or overtaken and passed any other car before you got to these? A. I hadn't passed any car, and I don't remember of meeting any; I might have. Q. That is what I had in mind, the distinction between passing and meeting. I thought there might be some confusion. You know that you did not overtake any car? A. Yes, sir."

From the testimony of Tholstrup and other witnesses, it was conclusively established that, while it was a dark night, by the aid of headlights there was visibility of at least two hundred feet in front of a car. The testimony also conclusively shows that Holman road is straight for at least a mile from Thirteenth avenue N. W. to Greenwood avenue, and that headlights of approaching cars could be seen the entire length of this highway, at least between the above designated points.

The testimony is in conflict as to whether there were or were not speed limit signs along this highway, limiting the speed to twenty-five miles per hour, and we will therefore assume that there were no speed signs or warning signs of any character. There was also considerable testimony relative to the difference in color between the new and old pavement, some testifying that the new pavement was lighter, and some that it was darker, than the old pavement; but all the witnesses who testified relative to this matter further stated that, by the use of headlights, a view could be had of the entire width of the highway and one could see that it was a forty-foot pavement. It does not appear that there was any obstruction on the pavement

which would in any way interfere with the use of the entire forty feet.

While appellants admit there is no statutory duty upon respondent to paint directional traffic stripes upon the highway, yet it is contended that, respondent having assumed to do so, and having taught and required the public to follow and rely upon such directional stripes, it is in the nature of a trap to allow the public to use a highway on which the existing standard yellow stripe is not, in fact, directional in character, when no signs, warnings, or precautions of any nature are taken to advise the public thereof.

It being admitted that there was no statutory duty cast upon respondent to paint directional traffic stripes upon the highway, the question then arises, in so far as this case is concerned, whether or not it was established that, because the yellow line was left in the center of the old pavement, without warning signs, or because of the failure to remove this yellow line before the new pavement was thrown open to traffic, an inherently dangerous condition was created, and that, because of such condition, the driver of the Rian car was misled, to his injury and the injury of Johanson.

██ Appellants cite *Tyler v. Pierce County,* 188 Wash. 229, 62 P. (2d) 32, wherein we stated:

"With respect to the second and third charges of negligence, this court has considered the obligation of municipalities to maintain barriers and post signs under varying circumstances. An analysis of the decisions will show that there is no such duty, unless (a) prescribed by law (*Lyle v. Fiorito,* 187 Wash. 537, 60 P. (2d) 709), or (b) the situation is inherently dangerous or of such a character as to mislead a traveler exercising reasonable care (*Neel v. King County,* 53 Wash. 490, 102 Pac. 396)."

It is appellants' contention that the facts in the instant case fall particularly within the latter exception

to the rule above expressed; or, in other words, that the situation here created (the leaving of the directional yellow line in the middle of the old pavement) was, in the language of the *Tyler* decision, "inherently dangerous or of such a character as to mislead a traveler exercising reasonable care."

Admitting the rule to be as above stated, and the exceptions, still we are unable to agree that the facts of this case bring appellants within the latter exception. In the first place, we seriously doubt if, under the facts in this case, it can be said that the leaving of the directional yellow line in the middle of the old pavement, without warning signs or barriers, created a situation inherently dangerous or of such a character as to mislead a traveler exercising reasonable care; but, in any event, we are certain that, under the facts of this case, there was no causal connection shown between the location of the yellow line, the failure to place warning signs, and the accident. In other words, there is no testimony, or inference which can reasonably be drawn from testimony, that the location of the yellow line was a proximate cause of the accident.

It will be remembered that the only testimony in this case shows that the Rian car was proceeding northerly in lane 3, which was the proper lane for northbound traffic, being the first lane to the right of the center of the forty-foot pavement. There is no testimony as to where the Rian car came into Holman road, how long it had been traveling thereon, or that it was ever nearer to the yellow line than when it pulled out from behind the cars it was following. The accident apparently occurred between Fourth avenue N. W. and Third avenue N. W., and, from the testimony, it appears that it would have been practically impossible for the Rian car to have come onto Holman road nearer to the scene of the collision than Sixth

avenue N. W., in which case the Rian car would have been traveling on the road, and apparently in its proper lane of travel, to the right of the center of the forty-foot pavement, for over 420 feet, and if it came onto Holman road farther to the southwest, it would have traveled a greater distance on this highway. There is no testimony that, at any time, the Rian car was nearer to the yellow line than as hereinbefore indicated, until it suddenly pulled out of the line of traffic into lane 2, and collided with the Tholstrup car. To say that the act of Rian in pulling out into lane 2 was in any way connected with or induced by the location of the yellow line, would, in our opinion, be to indulge in the rankest speculation.

Appellants state in their brief that, under the evidence, Rian had the right to believe that the yellow traffic stripe was, as yellow traffic stripes are wherever they exist, directional in character and purpose, and that he might properly and safely use any portion of the highway to the right of the line. Had it been shown that the driver of the Rian car, in coming into Holman road, or at any time while on the road, was driving in such a position that it could even be reasonably inferred that he was misled by the location of the yellow line, there might be merit to appellants' contention, but there is no such testimony in the case.

Appellants also state in their brief that a reasonably prudent person, driving an automobile on the Holman road, without knowledge of the extraordinary conditions there, *might,* and in all reasonable probability would, be deceived and misled into relying on the existing yellow line, *and that there was not the slightest evidence upon which the jury could have found that Rian was not deceived, or that he knew the directional stripe he was following and relying upon was misplaced and improperly located.*

We think the fallacy of the above statement is apparent both from a legal and factual standpoint. In the first place, as we have stated, there is no evidence, direct or circumstantial, that Rian was following or relying upon the yellow stripe; but, to our minds, the only reasonable inference which can be drawn from the testimony is that he was not following or relying upon the yellow line. Appellants say, in effect, that Rian *might have been* and probably was deceived and misled by the yellow line. Appellants cannot recover herein because of what they claim might have happened, or because the driver of the Rian car might have been misled by the location of the yellow line, or because there was no evidence upon which the jury could have found that Rian was not deceived. The burden is upon appellants to establish, by direct or circumstantial evidence, that the location of the yellow line did, in fact, deceive and mislead the driver of the Rian car, to his injury.

The jury may not enter into the realm of conjecture or speculation, in determining whether or not the location of the yellow line was a proximate cause of the collision. See *Chilberg v. Colcock,* 80 Wash. 392, 141 Pac. 888, wherein we stated:

"The rule, in cases of this character, is as stated in *Stratton v. Nichols Lumber Co.,* 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881, quoting from *Hansen v. Seattle Lumber Co.,* 31 Wash. 604, 72 Pac. 457, as follows:

" 'But there must be some evidence, either direct or circumstantial, that there was negligence on the one side, an injury resulting in damages on the other, and that the injury and damages followed the negligence, and were produced thereby . . . it is not proving his case by circumstantial evidence for the respondent to show that there were causes, for which the appellant would be liable, which could have produced the injury, without showing that it could not have been produced

in any other manner, or in any manner for which the appellant would not be liable.' "

We also stated in *Wilkie v. Chehalis County Logging Co.*, 55 Wash. 324, 104 Pac. 616:

"Liability does not rest in the negligent act, but upon proof that the act of negligence was the proximate cause of the injury. Appellant cites many authorities showing that improper use of a highway is a nuisance, but it does not follow that an individual can recover damages in an action of this kind because of its maintenance, unless it be shown by competent evidence, attaining a higher degree *than conjecture evidence,* that he has suffered an injury because of it." (Italics ours.)

We stated in *Armstrong v. Cosmopolis,* 32 Wash. 110, 72 Pac. 1038:

"It is earnestly insisted by counsel for appellants that this was sufficient testimony to go to the jury, and it was for them to determine whether it was sufficiently convincing to warrant a conclusion that deceased did fall off the bridge. But while it is true that the weight of the testimony is entirely for the jury, yet mere *speculation* and *conjecture* must not be confused with legitimate testimony." (Italics ours.)

In the instant case, it would be mere guessing, in view of all the facts, to say that Rian was in any way deceived and misled by the location of the yellow line.

Being satisfied that there is no evidence, or reasonable inference from evidence, that respondent King county was guilty of any negligence herein which was a proximate cause of the collision, it becomes unnecessary to discuss whether the driver of the Rian car was or was not guilty of contributory negligence, and it also becomes unnecessary to discuss the question of whether or not the trial court properly granted the motions of respondent for new trial.

For the reasons herein assigned, the judgment of

124

the trial court is affirmed in both the Johanson and Rian cases.

BLAKE, SIMPSON, BEALS, and DRIVER, JJ., concur.

