[No. 39140.    Department One.    April 18, 1968.]

JONATHAN FOVARGUE et al., *Respondents*, v. JOHN RAMSEYER,
*Appellant*.*

*Parker & Parker*, by *Lester T. Parker*, for appellant.

*Gladys Phillips*, for respondents.

ROSELLINI, J.—This is an appeal from an order granting a
new trial to the plaintiffs after a jury verdict in favor of
the defendant in an action to recover damages, arising out
of an intersection collision between a Honda motorcycle
driven by the plaintiff Jonathan Fovargue (who will be
referred to hereinafter as the plaintiff) and an automobile
driven by the defendant.

The accident happened at the intersection of Burleigh
and "F" Streets in Aberdeen, Washington. The defendant
was traveling north on "F" Street, and the plaintiff was
traveling east on Burleigh. The posted speed limit on Bur-

*Reported in 439 P.2d 966.

leigh Street at the place where the accident occurred was 20 miles per hour. Travelers on "F" Street at that intersection were required to yield the right-of-way to travelers on Burleigh, and a "Yield Right of Way" sign was posted 30 feet ahead of the intersection.

Burleigh Street curves to the right on the approach to the intersection and also comes over a hill. The crest of the hill is over 100 feet from the yield sign and 80 feet from the point of impact.

The defendant testified that, as he approached the yield sign, he slowed to 5 miles an hour, looked to the right and saw no approaching traffic. At the yield sign, traffic coming from the left could not be seen. He then proceeded slowly past the yield sign until he reached a point where he could see to the left on Burleigh Street. Observing no approaching traffic, he proceeded on into the intersection preparing to make a left turn. As he did so he heard the roar of an approaching motorcycle on his left and immediately applied his brakes. He came to a halt 3 feet south of the center of Burleigh Street. Then he saw the Honda coming over the crest of the hill. The Honda struck his left front bumper and was thrown around so that the side of the Honda struck the left front fender of the defendant's automobile. At the moment of impact, the plaintiff was thrown off the Honda and across the hood of the automobile, landing in the street on the right-hand side of the car.

The defendant testified that he first saw the Honda approaching as it came over the crest of the hill, that it was traveling 35 to 40 miles per hour, that it did not slacken its speed or swerve but proceeded straight on its course until it struck the front of the defendant's car, which the defendant alleged was stopped at the time. All of the eye witnesses gave testimony which tended to corroborate the testimony of the defendant that the Honda was speeding and did not swerve from its course, although the defendant's automobile was stopped. There was no evidence that the Honda could have been seen from the intersection before it reached the crest of the hill.

The plaintiff, on the other hand, testified that he was operating his Honda at 20 miles per hour; that as he came over the crest of the hill he observed the defendant's automobile stopped partially in the east bound lane of Burleigh Street and assumed that it would remain stopped, but that, as he approached the intersection, the automobile started forward; and that he swerved in an attempt to avoid a collision but was unable to do so. The plaintiff did not remember whether he had applied his brakes.

The defendant's automobile laid down 7 feet of skid marks. There were no discernible skid marks attributable to the Honda.

The jury was instructed on the duty of the defendant to yield the right-of-way; on the right of a driver to assume that others will obey the law until he knows to the contrary; and on the duty to obey speed limits. Contributory negligence was defined for the jury. There were no instructions regarding "deception."

After the jury returned its verdict in favor of the defendant, the trial court granted the plaintiff's motion for a new trial holding that it had erred in failing to instruct that the defendant was negligent as a matter of law in failing to yield the right-of-way. On appeal the defendant asks this court to set aside the order granting a new trial and reinstate the verdict.

In deciding that it had erred in refusing to instruct that the defendant was negligent as a matter of law, the trial court found the case of *Watson v. Miller*, 59 Wn.2d 85, 366 P.2d 190 (1961), to be controlling. In that case, as the disfavored driver approached an uncontrolled intersection, he looked first to the left and then to the right. When he looked to the right he observed the favored vehicle approaching at a distance of about 50 feet. He immediately applied his brakes but was unable to avoid a collision. This court held that, there being no evidence of deception on the part of the favored driver and it being established that the two vehicles were simultaneously approaching the intersec-

tion, an instruction that the disfavored driver was negligent as a matter of law was proper.

We cited the familiar rule that the fact that two cars collide within an intersection establishes that they were simultaneously approaching a given point within the intersection, within the meaning of RCW 46.60.150, which provided:

> Every operator of a vehicle on approaching public highway intersections shall look out for and give right of way to vehicles on his right, simultaneously approaching a given point within the intersection, and whether his vehicle first reaches and enters the intersection or not: *Provided*, That this section shall not apply to operators on arterial highways or to vehicles entering an intersection which is posted with the "Yield Right of Way" sign.

By its terms, that statute did not apply to vehicles entering an intersection posted with the "Yield Right of Way" sign.

RCW 46.60.150 was repealed by the legislature in 1965 (Laws of 1965, Ex. Ses. ch. 155). It has been superseded by RCW 46.61.180, which contains the same language insofar as it pertains to the duty of the operator. The only change is that the proviso has been broadened.

At the time the accident with which this case is involved occurred, the applicable statutory provision was found in RCW 47.36.110, which provided:

> In order to provide safety at intersections on the state highway system, the Washington state highway commission may require persons traveling upon any portion of such highway to stop before entering the intersection. For this purpose there may be erected a standard stop sign as prescribed in the state of Washington "Manual on Uniform Traffic Control Devices for Streets and Highways." All persons traveling upon the highway shall come to a complete stop at such a sign and the appearance of any sign so located shall be sufficient warning to a person that he is required to stop. A person stopping at such a sign shall proceed through such portion of the highway in a careful manner and at a reasonable rate of speed not to exceed twenty miles per hour. It shall be unlawful to fail to comply with the directions of any

such a stop sign: *Provided,* That when the findings of a traffic engineering study show that the condition of an intersection is such that vehicles may safely enter the major artery without stopping, the Washington state highway commission or local authorities in their respective jurisdiction shall install and maintain a "Yield Right of Way" sign.

The driver of a vehicle approaching a "Yield Right of Way" sign shall reduce speed or stop if necessary in order to yield the right of way to all traffic on the intersecting street which is so close as to constitute an immediate hazard. A motorist proceeding past such a sign with a resultant collision or other interferences with traffic on the intersecting street shall be prima facie evidence that the motorist had not obeyed the sign and yielded the right of way as provided by this statute. [1961 c 13 § 47.36.110. Prior: 1955 c 146 § 6; 1937 c 53 § 59; RRS § 6400-59.]

The jury was instructed according to the second paragraph of this statute. The legislature in 1965 enacted RCW 46.61.190 as a part of the Rules of the Road. It reads:

(1) Preferential right of way at an intersection may be indicated by stop signs or yield signs as authorized in RCW 47.36.110.

(2) Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by RCW 46.61.360 subsection (2), and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection.

(3) The driver of a vehicle approaching a yield sign shall in obedience to such sign slow down to a speed reasonable for the existing conditions and shall yield the right of way to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard during the time such driver is moving across or within the intersection: *Provided,* That if such a driver is involved in a collision with a vehicle in the intersection, after driving past a yield sign without stopping, such collision shall be deemed prima facie evidence of his failure to yield right of way.

Thus the applicable statute does not use the language of "simultaneous approach" but rather makes it the duty of the disfavored driver to yield to another vehicle which is "so close as to constitute an immediate hazard." The evidence of the defendant in this case tended to establish that, insofar as the defendant could see as he entered the intersection, there was no traffic close enough to constitute such a hazard, or any hazard.

For purposes of this opinion, we will assume that, in spite of the difference in language, the duty of looking and judging the safety of making a crossing is as stringent under the yield right-of-way statutes as it is under the intersection statutes.

There is a distinct difference in the facts of *Watson v. Miller, supra,* and this case. In that case, there was no suggestion that the favored vehicle was not plainly visible to a driver in the position of the disfavored driver as it approached the intersection. The rule that, where a collision occurs at an uncontrolled intersection and the operator of the favored vehicle has done nothing calculated to deceive the operator of the disfavored vehicle, the disfavored driver will be held to be negligent as a matter of law, was properly applied in that case. But that rule assumes that the favored vehicle is within the range of vision of the disfavored driver—that is, that it is there to be seen if the disfavored driver will but look.

In this case, the evidence was that the favored vehicle could not be seen until it reached the crest of the hill, and then only if the disfavored driver proceeded past the yield sign and looked to the left at the entrance to the intersection.

It is true we have held that the mere fact that the view of the disfavored driver is obstructed will not relieve him of the duty of ascertaining whether another vehicle is approaching, if he can reasonably bring his vehicle to a point from which his view is not obstructed. It is the duty of a disfavored driver to make his observations from a point at which he can clearly observe, not from a point

back from the intersection where his view is materially impaired. *Sanders v. Crimmins,* 63 Wn.2d 702, 388 P.2d 913 (1964) and cases cited.

The defendant in this case testified that he looked to the right at the "yield" sign, which was the only direction in which he had a view of the approaching traffic. He then proceeded slowly past the yield sign until he came to the edge of the intersection (30 feet north of the yield sign). He then had a view to the left as far as the crest of the hill, approximately 80 feet away. No traffic was in sight. As he entered the intersection, preparing to execute a left turn onto Burleigh, he heard the roar of the Honda and applied his brakes. As he came to a stop, he saw it coming over the hill. It was then too late for him to do anything to avoid the accident. If his testimony and that of the corroborating witnesses was to be believed, the plaintiff did not apply his brakes, although he had the defendant in plain view for 80 feet and was avowedly traveling only 20 miles per hour, and he did not swerve to the left. Had he done the latter, assuming the truth of the defendant's evidence, he could have avoided the accident by going in front of the defendant's vehicle.

■ The jury was entitled to accept the defendant's evidence as true. If it did so, it would be justified in finding that he was not negligent. He complied with the rule of *Sanders v. Crimmins, supra,* in that he proceeded to a point from which he could look to the left and see approaching traffic. The fact that he could not see beyond that point was not attributable to any negligence on his part. Presumably, the city's engineers had determined that traffic approaching from a greater distance than the crest of the hill did not constitute an immediate hazard, if it approached at the legal speed limit. Otherwise, it is reasonable to assume that they would have placed a traffic signal light at the intersection rather than a "Yield Right of Way" sign.

In the case of *Bennett v. Karnowsky,* 24 Wn.2d 487, 166 P.2d 192 (1946), a collision had occurred when a disfavored vehicle had entered the intersection and was struck by the

favored vehicle. The operator of the disfavored vehicle had stopped at the intersection and had looked for approaching traffic but had seen none. Traffic approaching at a distance of more than 75 feet was not visible because it was hidden by the crest of a hill, just as in this case. It was also foggy weather. This court held that the disfavored driver was justified in assuming that there was no traffic close enough to constitute a hazard, and was not negligent in proceeding into the intersection. The accident, this court said, *must have* happened because the favored driver was traveling at an excessive speed and did not maintain a proper lookout and keep his vehicle under proper control. A judgment for the disfavored driver was affirmed.

That case was cited with approval in *Shook v. Bristow,* 41 Wn.2d 623, 630, 250 P.2d 946 (1952), wherein we said: "There can be no doubt that respondent was not negligent if he entered the arterial at a time when no traffic was visible either to his left or right."

This rule has come to be known as the "clear stretch of road" rule. *See Tobias v. Rainwater,* 71 Wn.2d 845, 431 P.2d 156, (1967); *Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964); and *Bockstruck v. Jones,* 60 Wn.2d 679, 374 P.2d 996 (1962).

In *Roberts v. Leahy,* 35 Wn.2d 648, 651, 214 P.2d 673 (1950), this court held that it was for the jury to decide whether a pile of dirt in the road hid the favored vehicle, and stated the applicable rules as follows:

> When a favored vehicle is within view to the right of the disfavored vehicle it will be conclusively held that the disfavored driver actually saw what he could have seen if he had performed the duty of looking. His failure to do so is negligence as a matter of law. [Citing cases.]
>
> However, if the disfavored driver looks to his right from a *proper place* and cannot see the favored vehicle because it is hidden by a condition *in the street,* he has discharged his duty of using due care and is not guilty of negligence as a matter of law in proceeding into the intersection.

The rule applied by the trial court in this case, which was the rule held applicable in *Watson v. Miller,* 59 Wn.2d

85, 366 P.2d 190 (1961), presupposes that the first of these conditions exists, that is, that the favored driver was there to be seen if the disfavored driver had looked. Applying that rule was error, inasmuch as the defendant's testimony would support jury findings that the plaintiff was not in sight when the defendant looked (from a proper vantage point at the entrance to the intersection); that the defendant proceeded into the intersection in a prudent and careful manner; that he stopped as soon as he became aware of the plaintiff's approach; and that, had the plaintiff been proceeding at a legal rate of speed, he would have been able to avoid the collision with the defendant's stopped automobile.

The order granting a new trial is reversed and the verdict of the jury is reinstated.

FINLEY, C. J., HILL and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.