[No. 11-40135-2. Division Two. October 23, 1969.]

GEORGE A. McGOUGH *et al.*, *Appellants*, v. THE CITY OF
EDMONDS, *Respondent.*

*Bangs, Castle & Bright* and *Truman R. Castle,* for appellants.

*Anderson, Hunter & Carlson* and *William W. Baker,* for respondent.

PEARSON, J.—This is an appeal from a summary judgment dismissing plaintiff's personal injury suit against defendant city.

The motion for summary judgment was heard on the plaintiff's complaint, the defendant's answer, and the plaintiff's response to interrogatories. There was also one affidavit from each side, describing the scene of the accident, with photographs attached.

Plaintiff alleged in his complaint:

On or about June 4, 1966, at about 2:45 P.M., the plaintiff, George McGough, was riding a Honda motorbike in an easterly direction on 162nd Southwest in Edmonds, Washington. He stopped at the intersection of 75th Place on the hill. Because of the construction of the intersection, and the heavy growth of underbrush on the northwest corner, he was unable to properly observe traffic approaching on 75th Place West. He started out into the intersection and was struck by a car driven by

one Dale E. Sherman, who had likewise been unable to see the plaintiff's motorbike waiting outside the intersection.

The accident was caused by the gross wanton, willful negligence and ordinary negligence of the City of Edmonds in the following particulars, among others:

1. In failing to construct a safe intersection for vehicular traffic;
2. In failing to properly keep up the easement owned by the City in such a manner that cars approaching the intersection could see each other;
3. In failing to erect signs to warn of an obviously dangerous situation.

In its answer, defendant denied the above allegations and asserted that plaintiff was contributorily negligent. Defendant moved for summary judgment, supporting its motion by written interrogatories to plaintiff and the affidavit of John Moran, City Superintendent of Streets. Plaintiff's responses to the interrogatories contained this description of the accident:

Going in an Easterly direction on 162nd Southwest in Edmonds, Wash., on June 4, 1966, at about 2:45 P.M., I stopped at intersection of 75th Place and was struck by an auto driven by Dale E. Sherman.

Plaintiff also stated in response to another interrogatory that he did not see the other vehicle before the accident, but "just looked up and there he was." In another answer plaintiff stated that he had not exceeded 10 miles per hour in the 200 feet before the collision.

The defendant's affidavit and accompanying photographs indicate that 162nd S.W. forms a "T" intersection with 75th Place West. 162nd Street S.W. is constructed at an uphill grade to its intersection with 75th Place. The photographs also show that 75th Place curves to the left (west) north of the intersection. The affiant stated that the vegetation on the northwest corner of the intersection diminishes "the view of oncoming traffic" but that the intersection could be safely negotiated and was not inherently dangerous.

In opposing the motion, plaintiff presented the affidavit

of an investigator with accompanying photographs of the intersection. The photographs show the uphill grade of 162nd Street at the intersection, the vegetation on the northwest corner, and a "Yield Right Of Way" sign at the intersection facing plaintiff's direction of travel. The investigator stated that the vegetation and grade at the intersection "substantially and dangerously diminished" visibility of southbound vehicles on 75th Place, making the intersection "difficult and dangerous to negotiate" for traffic entering from 162nd Street S.W. Both parties have questioned the conclusions expressed in the opposing affidavits, and we treat those conclusions as surplusage. *Henry v. St. Regis Paper Co.*, 55 Wn.2d 148, 346 P.2d 692 (1959).

The foregoing is a rather complete resume of the record on appeal, and so far as we may presume, is all the trial court had before it. Judgment provided:

Dismissal, with prejudice and with costs, shall be, and hereby is entered in this cause for the reason, that as a matter of law, defendant City of Edmonds, was not negligent on the facts and inferences therefrom alleged by the plaintiffs, defendant having no duty under the facts of this case to trim the vegetation from the unimproved portion of the right-of-way at the intersection in question.

This appeal is made more difficult by the fact that both parties obviously argued factual matters to the trial court (and do the same in their briefs on appeal) which are not a part of any evidentiary matters contained in the statement of facts. One of these matters was the direction of travel of the favored driver. The record is void of any testimony concerning the actions of the favored driver prior to the accident. Both parties state that he was proceeding from north to south but we are not told how far north of the intersection the westerly curve commences. Both the trial court and the appellate court are asked to draw inferences from photographs without accompanying testimony as to the place from which such photographs were taken.

The issue, then, is whether or not, on this record, the trial court was warranted in dismissing the action with

prejudice under Rules of Pleading, Practice and Procedure, 56, RCW vol. 0.

We repeat the frequently stated rule that the office of a summary judgment is to avoid a useless trial. In *Almy v. Kvamme,* 63 Wn.2d 326, 329, 387 P.2d 372 (1963) the Supreme Court stated:

> It [summary judgment] is to test, in advance of trial, whether evidence to sustain the allegations in the complaint actually exists. Evidentiary pleadings alone, if properly challenged by controverting affidavits, depositions, and admissions presented by the moving party, will not carry the issue of fact to a trial. The object of a motion for summary judgment is to separate the wheat from the chaff in evidentiary pleadings, and to establish, at the hearing, the existence or nonexistence of a genuine, material issue. *Preston v. Duncan,* 55 Wn. (2d) 678, 349 P. (2d) 605 (1960).

This rule is more readily stated than applied and brings into focus the burden placed upon both parties when summary judgment is sought. The moving party is said to have the burden of showing that there is no genuine issue of material fact on each theory of liability advanced by his adversary. *Preston v. Duncan, supra.* When this is done, the nonmoving party may not rest upon the mere allegations or denial of his pleadings, but his response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment follows. *W. G. Platts, Inc. v. Platts,* 73 Wn.2d 434, 438 P.2d 867 (1968).

Did the defendant meet his burden in this case? If we disregard the improper conclusion contained in the affidavit of his witness, John Moran, the evidence showed, without dispute, that the plaintiff, proceeding easterly on South 162nd Street, approached the 75th Place intersection at a slow speed and brought his Honda motorbike to a stop at its entrance. View to his left was obstructed by vegetation growing off the street. He proceeded into the intersection and was struck by a southbound vehicle which, by virtue of a "Yield Right Of Way" sign, had the right-of-way.

These facts were not disputed by the plaintiff's affidavits, pleadings or photographs. Defendant urges that these undisputed facts establish nonliability of the city as a matter of law, because:

■ (1) There is no duty on the city to maintain unobstructed view intersections. *Barton v. King County,* 18 Wn.2d 573, 139 P.2d 1019 (1943).

(2) A street is not rendered "inherently dangerous" so as to require the erection of warning signs solely because the municipality fails to cut down the natural vegetation which tends to obstruct the view at an intersection. *Bradshaw v. Seattle,* 43 Wn.2d 766, 264 P.2d 265, 42 A.L.R.2d 800 (1953); *Rathbun v. Stevens County,* 46 Wn.2d 352, 281 P.2d 853 (1955).

■ (3) In any event the absence of other warning signs would be immaterial, inasmuch as plaintiff had notice of the danger and brought his vehicle to a stop at the intersection. *Lee v. Sievers,* 44 Wn.2d 881, 882, 271 P.2d 699 (1954):

> [Plaintiff wife] cannot rely upon defendants' failure to place barriers or warning signs at the point in question. The conditions being apparent and known to her, there was no necessity for signs and barriers. Their only object is to give notice of a dangerous situation.

These are all correct statements of the law and applicable here.

(4) Defendant also urges that these undisputed facts show that the plaintiff was guilty of contributory negligence as a matter of law in failing to yield the right-of-way to the driver on 75th Place.

However, plaintiff contends that the photographs depict (1) 162nd as a steep grade up to the intersection, (2) a westerly curve on 75th Place, an undetermined distance to the north of the intersection, (3) an absence of warning signs on 75th Place, and (4) heavy growth of vegetation on the northwest corner. Consequently, an issue of fact should exist as to whether or not the intersection was "inherently dangerous" so as to require appropriate warnings to both drivers.

He relies on those cases which require the municipality to give appropriate warnings where the facts show an inherently dangerous condition of the roadway or of such character as to mislead a traveler exercising reasonable care. *Lucas v. Phillips,* 34 Wn.2d 591, 209 P.2d 279 (1949); *Ulve v. Raymond,* 51 Wn.2d 241, 317 P.2d 908 (1957); *Schneider v. Yakima County,* 65 Wn.2d 352, 397 P.2d 411 (1964); *Provins v. Bevis,* 70 Wn.2d 131, 422 P.2d 505 (1967).

We can appreciate the difficulty involved at the motion stage of a lawsuit in demonstrating the "inherently dangerous" concept and we agree that summary judgment should not be used where a real doubt exists as to decisive factual issues. *Bartlett v. Northern Pac. Ry.,* 74 Wn.2d 881, 447 P.2d 735 (1968). There is a real doubt in our minds on the meager record before us, as to whether or not this intersection was inherently dangerous because of the grade, the curve and the obstructed visibility. But assuming that such an issue was made is it a *material* issue? The duty placed upon the municipality was most recently stated in *Provins v. Bevis, supra,* at 138:

> At the outset, it should be observed that we are committed to the rule that, although a county is not an insurer against accident nor a guarantor of the safety of travelers upon its roadways, it is nevertheless obligated to exercise ordinary care to keep its public ways in a safe condition for ordinary travel. *Fritch v. King Cy.,* 4 Wn.2d 87, 102 P.2d 249 (1940); *Berglund v. Spokane Cy.,* 4 Wn.2d 309, 103 P.2d 355 (1940), and cases cited. And, this obligation includes the responsibility to post adequate and appropriate warning signs when such are required by law, or where the situation, to the county's actual or constructive knowledge, is inherently dangerous or of such a character as to mislead a traveler exercising reasonable care. *Tyler v. Pierce Cy.,* 188 Wash. 229, 62 P.2d 32 (1936); *Johanson v. King Cy.,* 7 Wn.2d 111, 109 P.2d 307 (1941); *Lucas v. Phillips,* 34 Wn.2d 591, 209 P.2d 279 (1949); *Schneider v. Yakima Cy.,* 65 Wn.2d 352, 397 P.2d 411 (1964).

If the plaintiff is urging that appropriate signs were re-

quired to warn *him* of the inherently dangerous condition of the intersection, then we agree with the defendant that the absence of such signs would be immaterial inasmuch as plaintiff stopped before entering the intersection. *Lee v. Sievers, supra.*

If, however, plaintiff is urging, as we think he is, that the city breached its duty to *him* by failing to provide signs on the other street, warning the driver that collided with him that the intersection was inherently dangerous, then we think it was incumbent upon him to produce testimony, if he could, that the failure of the city to warn the favored driver would somehow operate to excuse his statutory duty and obligation to yield the right-of-way. This he did not do. The other driver's testimony is not before us. The distance from the intersection to the curve is not before us. The speed limit on 75th Place is not before us. In short, we are without factual evidence on which to make a judgment as to whether or not a plaintiff's failure to yield the right-of-way would be excused (1) because of the topography and design of the intersection, (2) because of the actions of the favored driver, or (3) because of the failure of the city to warn that driver.

RCW 46.61.190 provides:

(3) The driver of a vehicle approaching a yield sign shall in obedience to such sign slow down to a speed reasonable for the existing conditions and shall yield the right of way to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard during the time such driver is moving across or within the intersection: *Provided,* That if such a driver is involved in a collision with a vehicle in the intersection, after driving past a yield sign without stopping, such collision shall be deemed prima facie evidence of this failure to yield right of way. [1965 ex.s. c 155 § 30.]

■ To excuse the violation of that statute in this case, plaintiff would be required to produce evidence to create an issue of fact on the so-called "clear stretch of the road"

rule which was most recently applied in *Fovargue v. Ramseyer*, 73 Wn.2d 574, 439 P.2d 966 (1968).

That rule will excuse the statutory violation if the disfavored driver looks from a *proper* place and cannot see the favored vehicle because it is hidden by a *condition of the street*. He is then not negligent as a matter of law in proceeding into the intersection.

The disfavored driver may not rely solely upon an obstructed view if he can reasonably bring his vehicle to a point from which his view is not obstructed. It is his duty to make his observations from a point at which he can clearly observe, not from a point back from the intersection where his view is materially impaired. *Sanders v. Crimmins*, 63 Wn.2d 702, 388 P.2d 913 (1964).

In no sense has plaintiff created an issue of fact under the "clear stretch of the road" rule. In his answers to interrogatories the following question and answer appear:

Interrogatory No. 7: State when, if ever, you first saw [the other] vehicle just prior to the accident.

Answer: No, I just looked up and there he was.

Plaintiff made no attempt to connect his failure to observe the favored vehicle with the topography and design of the intersection.

■ It is also clear that plaintiff may not rely on the deception doctrine to excuse his statutory violation. The application of that doctrine requires that the disfavored driver be deceived, by the wrongful and negligent actions of the favored driver, into believing that he has a fair margin of safety in proceeding into the intersection. The deception must be "tantamount to an entrapment." *Mondor v. Rhoades*, 63 Wn.2d 159, 167, 385 P.2d 722 (1963). (We do not deem it necessary to hold that the deception doctrine will be applied to RCW 46.61.190, the recent "Yield Right Of Way" statute, although such a holding is probable. *See Fovargue v. Ramseyer, supra.*)

Plaintiff has produced no evidence to show how the operations of the favored driver deceived him in this case and it

is doubtful that he could do so by virtue of his answer to interrogatory 7.

We conclude that even though plaintiff might have created an issue of fact on whether or not the intersection was inherently dangerous, he has totally failed to produce evidence to show that the intersection characteristics affected his own behavior or were a causative factor in the collision which occurred.

We thus reach the crucial question presented by this appeal. Did the defendant make a sufficient showing so as to compel the plaintiff to set forth evidence which would excuse his statutory violation? *Preston v. Duncan, supra; W. G. Platts, Inc. v. Platts, supra.* We believe that it did, in showing without dispute that plaintiff failed to yield the right-of-way to the favored vehicle on the arterial.

We hold that where summary judgment is sought in a personal injury suit arising from the collision of two vehicles in an intersection, and where it appears from the evidence produced by the moving party that the nonmoving party has violated his statutory duty to yield the right-of-way, then to defeat such motion, the nonmoving party must produce evidence to create an issue of fact which would operate to excuse the violation. To hold otherwise is to abandon summary judgment procedures in intersection cases.

The judgment of the trial court is affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.

———

Petition for rehearing denied November 12, 1969.