[No. 574-3.   Division Three.   August 2, 1973.]

HUBERT LEROY SENEY, *Individually and as Administrator, Appellant,* v. GLENN HASKINS *et al., Respondents.*

*Robert H. Leeds, Jr.* (of *Schimanski & Leeds*), for appellant.

*Robert E. Stoeve* (of *Turner, Stoeve, Gagliardi & Kennedy*) and *William P. Wimberley* (of *Richter, Wimberley & Ericson*), for respondents.

MUNSON, J.—Plaintiff appeals from judgment entered on a jury verdict in favor of the defendants.

The plaintiff brought this action seeking recovery of damages for the death of his son, Robert M. Seney. The action is on behalf of himself as an individual, and as the administrator of the decedent's estate, as well as on behalf of the decedent's two brothers. The action arose out of a motorcycle-automobile collision in Spokane County, Washington. The jury found both the parties negligent.

The principal issues presented are whether the trial court erred (1) in failing to instruct on one of plaintiff's theories, namely the first phase of the doctrine of last clear chance, and (2) in giving an instruction based upon the "clear stretch of road" rule.

On the afternoon of July 25, 1971, decedent and his friend, Robert Aho, were riding their motorcycles south on Flora Road in the Spokane Valley. Flora Road is a county arterial highway, as designated by Spokane County Code § 46.61.2001, consisting of two blacktopped lanes, each approximately 11 feet in width. The total width of the highway, including both shoulders, is 44 feet. The speed limit thereon is 35 m.p.h. At a point approximately 480 feet north of the intersection of Broadway and Flora Road, decedent reached the crest of the Flora overpass which traverses the Spokane freeway, *i.e.*, Interstate 90. There is testimony which would support a finding that decedent was traveling between 50 and 60 m.p.h. as he came over the crest of the overpass. The south edge of the overpass is approximately 80 feet from its crest, or approximately 400 feet from the intersection of Flora Road and Broadway.

As the decedent was proceeding south on Flora Road, defendant Mrs. Jewel Haskins was driving her car east on

Broadway, approaching the Flora intersection. Her husband, a codefendant, was a passenger in the car. The record shows she stopped at a stop sign located approximately 35 feet west of the intersection itself. The testimony of both Mr. and Mrs. Haskins corroborates the placement of the stop sign, and indicates that they in fact did stop at a point parallel to the sign. While the car remained stopped, the defendants conversed for approximately 30 seconds. Mrs. Haskins testified that after carefully looking both ways and seeing no traffic, she slowly proceeded into the intersection with the intention of turning left (north) on Flora Road. She stated that after her car had entered the southbound lane of Flora Road she again looked to her left. She then for the first time saw decedent, proceeding south, somewhere near the crest of the overpass. Her statement, given to Washington State Trooper Olson at the scene of the accident, and testified to by him, was as follows:

> "We were going east bound on Broadway, stopped and looked both ways, slowly pulled out partways into the street, saw the motorcycles coming over the hump. I hit the gas hoping to get out of the way of the motorcycles. My husband yelled to look out."

Defendants testified that almost instantaneously they both observed the decedent on his motorcycle, whereupon Mr. Haskins yelled at Mrs. Haskins to "gun" the car. This she did, but was unable to clear the southbound lane of Flora Road before the decedent collided with the left rear door of the defendants' station wagon. The decedent was thrown through the closed left rear door window, landing inside defendants' station wagon behind the front seat. He later died at a Spokane Valley hospital. The point of impact was in the intersection, in the southbound lane of Flora Road, approximately 47 feet from the stop sign and near the center line. The decedent's motorcycle left a skid mark in a straight line for 88 feet 5 inches before impact. It was estimated by an expert witness that the decedent's speed at the time of impact was at least 35 m.p.h.

Plaintiff assigns error to the court's failure to give his

proposed instruction pertaining to the first phase of the doctrine of last clear chance.[1] We agree.

Under this doctrine, the decedent's contributory negligence will not bar plaintiff's recovery "[w]here the defendant *actually saw the peril* of a traveler on the highway and *should have appreciated the danger and failed to exercise reasonable care* to avoid injury, . . ." (Italics ours.) *Lee v. Cotten Bros. Co.*, 1 Wn. App. 202, 209, 460 P.2d 694 (1969); *Chapman v. State*, 6 Wn. App. 316, 318, 492 P.2d 607 (1972). Furthermore, the evidence, when viewed most favorably to the plaintiff, must show the defendants actually had a clear opportunity to avoid the accident. *Wigton v. Gordon*, 3 Wn. App. 648, 477 P.2d 32 (1970); *Shiels v. Purfeerst*, 39 Wn.2d 252, 235 P.2d 161 (1951). This element has been stated to require "sufficient time to appreciate the peril of the negligent plaintiff . . . and to take the necessary steps to avoid injuring him." *Lee v. Cotten Bros. Co., supra* at 210. Whether a jury should be instructed on this issue is a question of law. *Schroeder v. Taylor*, 70 Wn.2d 1, 422 P.2d 21 (1966).

Considering the testimony, in the light most favorable to the plaintiff, the plaintiff was entitled to an instruction on the first phase of last clear chance. Defendant Mrs. Haskins stopped at the stop sign, located about 35 feet west of the closest point to the intersection, then apparently slowly proceeded to cross Flora Road. Her testimony shows she actually did see decedent near the crest of the overpass, more than 400 feet away, after she had proceeded into Flora Road.

Furthermore, both she and her husband testified decedent appeared to be flying over the overpass, giving the

[1] "If you find that the plaintiff was negligent and that plaintiff's negligence continued up to the time of the accident and if you find that the defendant actually saw the plaintiff in peril and if thereafter the defendant had the time and opportunity to avoid the accident by the exercise of ordinary care, he had a duty to do so. If you find that the defendant failed to do so and that his failure was a proximate cause of the accident, he is liable notwithstanding plaintiff's own negligence.

"Under the doctrine of last clear chance your verdict must be for the plaintiff."

impression that the motorcycle was virtually hurling itself in their direction. Both defendants appreciated the potential peril to the decedent.

Under this version of the facts, Mrs. Haskins, who was within the southbound portion of Flora Road when she first saw decedent, had only to travel less than the 11-foot wide southbound lane of Flora Road, while the decedent was traveling 400 feet or more, to avoid the accident. From these facts, there is evidence from which a jury could find the defendant Mrs. Haskins actually saw decedent's peril from a point where she had a last clear chance to avoid the accident. The quantum of her effort in traveling less than the width of a single traffic lane is not sufficient to preclude a jury finding defendant Mrs. Haskins had a last clear chance to avoid the injury. *Cf. Roloff v. Bailey,* 46 Wn.2d 358, 281 P.2d 462 (1955); *Shiels v. Purfeerst, supra.* The jury might find the decedent was closer than this testimony indicates; however, that is a matter solely within their province. The evidence did justify the giving of the instruction and the failure to so do is reversible error.

■ Inasmuch as the case is to be remanded for a new trial, we will consider another issue raised by the plaintiff. Error is assigned to the giving of an instruction based upon the "clear stretch of road" rule. The court in the instruction, to which error is assigned, first quoted RCW 46.61.360(2)[2] and then stated that the right-of-way is not absolute but relative, with the primary duty left upon the disfavored driver. The court then went on to instruct as follows:

If the driver facing a stop sign looks to his left from a proper place and cannot see the vehicle on the through

[2]RCW 46.61.360(2) states:

"Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection."

street or highway because it is hidden by a condition in the street, and if the driver facing the stop sign proceeds into the intersection in a prudent and careful manner on the assumption that the clear stretch of highway provides a fair margin of safety, and if the driver on the through street or highway wrongfully, negligently or unlawfully operates his vehicle in such a manner that the other driver does not have a fair margin of safety because of such operation, then the right-of-way rule would not apply in favor of the driver on the through street or highway.

The laws of this state and of Spokane County require a driver approaching a stop sign, if no crosswalk or stop line exists, to stop "at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection." RCW 46.61.360(2); Spokane County Code § 46.61.360(2). The county ordinance is, word for word, the same as the state statute.

RCW 46.61.360(2) was enacted in 1965. *Bockstruck v. Jones*, 60 Wn.2d 679, 374 P.2d 996 (1962), quoting extensively from *Fetterman v. Levitch*, 7 Wn.2d 431, 437, 109 P.2d 1064 (1941) stated: "this court has never said, dogmatically, that 'one entering an intersection' must look . . . immediately *at the curb line;* . . ." This statement must now be considered mindful that the statute and county ordinance were enacted subsequent to the cases in which the above statement appears. When the legislative bodies of the state and the county dictate you must stop "at the point nearest the intersecting roadway," it is tantamount to saying "at the curb line," "where the driver has a view of approaching traffic on the intersecting roadway . . ." Cf. *Chapman v. Claxton*, 6 Wn. App. 852, 497 P.2d 192 (1972); *Fovargue v. Ramseyer*, 73 Wn.2d 574, 439 P.2d 966 (1968); *Harris v. Fiore*, 70 Wn.2d 357, 423 P.2d 63 (1967); *Tobias v. Rainwater*, 71 Wn.2d 845, 431 P.2d 156 (1967); *Ward v. Zeugner*, 64 Wn.2d 570, 392 P.2d 811 (1964).

█ The clear stretch of the road rule is grounded upon deception, created either by an obstruction in the highway

or the favored driver's conduct. Before an instruction can be given upon the deception rule, there must be evidence showing the disfavored driver made a proper observation from a proper point. There is insufficient evidence in the record before us to support a finding that defendant Mrs. Haskins was reasonably prudent in so doing by looking to her left from a proper point of observation pursuant to RCW 46.61.360(2) or Spokane County Code § 46.61.360(2). According to her own testimony, she stopped at the stop sign 35 feet from the intersection and then proceeded slowly, but without stopping or looking, into the intersection. There is no evidence that she stopped at a point nearest the intersection. Thus, as a matter of law she could not meet the requirement of the given instruction "looks to his left from a proper place." Unless the evidence upon retrial supports such a finding, the instruction should not be given.

Finally, plaintiff objects to the failure to give his proposed instruction which stated that defendants' failure to yield the right-of-way was negligence as a matter of law. While on this record, consistent with what we've said above, we would find defendant Mrs. Haskins negligent as a matter of law by failing to yield the right-of-way to the favored driver, we are not in a position to say what the testimony would be on retrial. We note, also, that such a holding does not mean that Mrs. Haskins' negligence was necessarily the proximate cause of the accident. The jury was properly apprised by another instruction that the issue of negligence and the issue of proximate cause are separate considerations.

The remaining assignments of error are not likely to recur upon retrial; hence they will not be considered. Plaintiff's contention regarding costs of preparing a statement of facts, by reason of our holding herein, is now answered by CAROA 55(b)(1).

Reversed and remanded for new trial.

GREEN, C.J., and McINTURFF, J., concur.

Petition for rehearing denied August 30, 1973.